**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Lachan Taryn RUSSELL, Appellant.**

Superior Court of Pennsylvania.

Argued April 25, 2007.
Filed Dec. 12, 2007.

J. Kerrington Lewis, Pittsburgh, for appellant.

Paul R. Scholle, Pittsburgh, for appellee.

BEFORE: McCAFFERY, DANIELS and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Lachan Taryn Russell appeals the judgment of sentence entered on May 8, 2006, in the Court of Common Pleas of Allegheny County, following her convictions for arson endangering persons [1] and related offenses, and cruelty to animals. Upon review, we affirm in part, reverse Appellant's judgment of sentence with respect to her cruelty to animals conviction, and discharge Appellant as to her cruelty to animals conviction.

¶ 2 The relevant facts of this case were set forth fully in the trial court's Pa.R.A.P. 1925(a) opinion, filed September 11, 2006, as follows:

Detective J.R. Smith, of the City of Pittsburgh Police Department, testified that he and his partner, Detective Timothy Rush, were assigned to the "cold case" homicide squad in 2004. They were assigned to investigate seven old unsolved homicide cases, including [the present] case, which involved the death of two young children in a house fire in the early morning hours of July 11, 1990. After reviewing the old files from 1990, the detectives contacted [Appellant] and interviewed her on February 14, 2005. After initially giving the detectives a statement similar to the one that she had given in 1990, wherein she denied any involvement in setting the fire, she said that she wanted to tell [them] what really happened. [Appellant] indicated that [co-defendant Tequilla Fields] wanted to kill her grandmother's dog. [Fields] wanted to burn the dog. On the night of the incident, [Fields] gave [Appellant] a liquid to put in her purse. They went to the home of [Fields' grandmother], Minnie Bivins. They put [Fields'] two young children to bed and told Ms. Bivins that they were leaving to get cigarettes. As they left the residence, [Fields] doused the dog, [which] was tied up on the front porch, with the liquid that was in [Appellant's] purse. [Fields] threw a match on the

1. 18 Pa.C.S.A. § 3301(A).

dog[,] and it immediately became a fireball. [Appellant] dropped her purse and ran. The dog tried to follow them, but [it was] tethered on the porch. Very quickly, the entire house was engulfed in flames. [Fields and Appellant] went back up to the house and [Fields'] grandmother was already outside. They attempted to rescue the children, but were unable to do so[, and the children died]. [Fields' brother, Andre,] jumped out a third story window. Once the emergency and fire vehicles arrived, [Fields and Appellant] met and they made a "street pact" never to tell anyone how the fire started.

Trial court opinion, 9/11/2006, at 2–3 (citations omitted).

¶ 3 On February 15, 2005, after Appellant spoke with Detectives Smith and Rush, she was arrested. Upon being taken into custody, Appellant was interrogated by the police regarding her involvement in the fire. While being interrogated, Appellant made several admissions regarding her involvement in the fire. Based on her admissions, Appellant was charged with the following offenses: criminal homicide;[2] arson endangering persons (2 counts); arson endangering property;[3] causing a catastrophe;[4] cruelty to animals;[5] and criminal conspiracy.[6] The case proceeded through pretrial pleadings, and Appellant filed an omnibus pretrial motion that sought the following relief: (1) dismissal of the charges on the basis of the statute of limitations; (2) suppression of Appellant's statement made while in the custody of the police; (3) preclude admission at trial of Appellant's prior juvenile bad acts. Ulti-mately, the trial court denied all forms of relief requested in the omnibus pretrial motion.

¶ 4 Appellant was tried before a jury, and, on December 21, 2005, she was found guilty of one count of arson endangering persons, arson endangering property, causing a catastrophe, and cruelty to animals. The jury acquitted Appellant of criminal homicide, the second count of arson endangering persons, and criminal conspiracy. Following her conviction, Appellant made an oral motion to set aside her convictions based on the statute of limitations. The trial court denied this motion. On May 8, 2006, at sentencing, Appellant made a request for extraordinary relief to set aside her convictions based on the statute of limitations. The trial court denied Appellant's request and sentenced Appellant to an aggregate term of 18 to 60 months of incarceration.

¶ 5 Appellant filed a timely notice of appeal to this Court, and the trial court ordered her to file a concise statement of matters complained of on appeal. Appellant complied and filed the concise statement in a timely fashion. Thereafter, the trial court authored an opinion that addressed the issues presented in Appellant's concise statement.

¶ 6 Appellant presents the following issues for our review:

1. Whether the trial court erred in denying [Appellant's] post-verdict motion to set aside the jury's guilty verdicts because the statute of limitations had run on those particular crimes?

---

**2.** 18 Pa.C.S.A. § 2501.

**3.** 18 Pa.C.S.A. § 3301(C).

**4.** 18 Pa.C.S.A. § 3302.

**5.** 18 Pa.C.S.A. § 5511(a)(1)(i).

**6.** 18 Pa.C.S.A. § 903.

2. Whether the trial court erred in denying [Appellant's] pretrial omnibus motion to suppress Appellant's statement given during a custodial interrogation?

3. Whether the trial court erred in admitting evidence of [Appellant's] prior bad acts committed while [she was] a juvenile?

4. Whether the trial court erred in precluding [Appellant's] expert witness from testifying regarding the undue influence and psychological pressure an adult could exert on the fifteen year-old [Appellant]?

5. Whether the trial court erred in denying [Appellant's] request for a jury instruction regarding corruption of minors?

Appellant's brief, at 4 (bracketed language supplied).

¶ 7 Appellant asserts first that the trial court erred in denying her post-verdict motion to set aside the verdicts of guilty entered against her because the statute of limitations had run on those non-homicide crimes. This issue presents this Court with a pure question of law, and, as such, we exercise plenary review. *See Commonwealth v. Johnson*, 874 A.2d 66, 70 (Pa.Super.2005), *appeal denied*, 587 Pa. 720, 899 A.2d 1122 (2006). The essence of Appellant's argument is as follows: (1) in order to toll the statute of limitations, the Commonwealth was obligated to state in the criminal information the exception to the statute of limitations it relied upon in charging Appellant beyond the time limits set forth in the statute of limitations; and (2) the exception to the statute of limitations relied upon by the Commonwealth in this case, *see* 42 Pa.C.S.A. § 5551(4) (no limitation applicable for any felony alleged to have been perpetrated with murder of first or second degree), was not applicable because the jury ultimately acquitted Appellant of second-degree murder, and, therefore, there was no "connection" between the alleged homicides and the other non-homicide crimes that would permit the Commonwealth to bypass the limitation periods for the non-homicide crimes so as to initiate prosecution against Appellant for the non-homicide crimes.

¶ 8 Historically, the purpose of statutes of limitations in Anglo–American jurisprudence has been to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of the alleged criminal act in order to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time as well as to minimize the danger of official punishment because of acts committed in the far-distant past. *See Commonwealth v. Cardonick*, 448 Pa. 322, 332, 292 A.2d 402, 407–8 (1972) (citation omitted). In Pennsylvania, the statute of limitations is not a constitutional right but, instead, is an act of legislative grace, whereby the government surrenders its ability to prosecute an individual after the passage of a stated period of time. *See Commonwealth v. Johnson*, 520 Pa. 165, 170, 553 A.2d 897, 900 (1989); *see also Commonwealth v. Wilcox*, 56 Pa.Super. 244, 250 (1914). However, the Pennsylvania General Assembly chose to place no limitation of time on murder prosecutions due to its policy decision that punishment of the most serious crime should outweigh the difficulties otherwise incurred in the prosecution of "stale" charges. *See, e.g., Commonwealth v. Scher*, 569 Pa. 284, 325, 803 A.2d 1204, 1229 (2002) (plurality).

¶ 9 The General Assembly's "murder exception" to the statute of limitations is codified at 42 Pa.C.S.A. § 5551, which states, in pertinent part, the following:

A prosecution for the following offenses may be commenced at any time:

(1) Murder.

(2) Voluntary manslaughter.

(3) Conspiracy to commit murder or solicitation to commit murder if a murder results from the conspiracy or solicitation.

(4) **Any felony *alleged* to have been perpetrated in connection with a murder of the first or second degree, as set forth in 18 Pa.C.S. § 2502(a) or (b) and (d) (relating to murder).**

(emphasis supplied). In the present case, the Commonwealth charged Appellant with second-degree murder and, consequently, relied upon the exception set forth at 42 Pa.C.S.A. § 5551(4) to bypass the five-year limitation for arson and conspiracy (arson) prosecutions, *see, e.g.,* 42 Pa. C.S.A. § 5552(b)(1), (b)(3), and the two-year limitation for cruelty to animals and causing a catastrophe prosecutions. *See, e.g.,* 42 Pa.C.S.A. § 5552(a).

■ ¶ 10 Appellant's first argument is contrary to the law of this Commonwealth. In *Commonwealth v. Stockard,* 489 Pa. 209, 217–18, 413 A.2d 1088, 1092–93 (1980), our Supreme Court held that the Commonwealth is not obligated to inform a defendant of its attempts to toll the statute of limitations in the charging document filed against the defendant. Rather, the Commonwealth satisfies the notice requirement of due process where the defendant, at some reasonable time before trial, is apprised that the Commonwealth will seek to toll the statute of limitations. Like the case in *Stockard,* the Commonwealth apprised Appellant at the hearing on Appellant's motion to dismiss that it was relying upon 42 Pa.C.S.A. § 5551(4) as its vehicle to bypass the limitation on arson prosecutions in order to bring the arson charges against Appellant. Accordingly, there was no obligation on the part of the Commonwealth to inform Appellant of its attempts to bypass the statute of limitations in the criminal informations filed against Appellant. *Id.,* at 217–18, 413 A.2d at 1092–93. Likewise, as Appellant was aware of the Commonwealth's use of the exception set forth at 42 Pa.C.S.A. § 5551(4), there was and could be no prejudice to Appellant. *Id.,* at 217–18, 413 A.2d at 1092–93. Accordingly, Appellant's argument fails.

¶ 11 Appellant argues next that 42 Pa. C.S.A. § 5551(4) was not applicable in this case because the jury ultimately acquitted her of second-degree murder, and, as such, there was no "connection" between the alleged homicides and the other non-homicide crimes that would permit the Commonwealth to bypass the limitation periods for the non-homicide crimes. Appellant's argument centers upon our construction of the statute of limitations.

■ ¶ 12 Required as we are to construe words in statutes according to their common and approved usage, *see* 1 Pa. C.S.A. § 1903(a), the term "alleged" set forth in 42 Pa.C.S.A. § 5551(4) must be afforded the following definition, "declared or stated to be as described; asserted." *Webster's Encyclopedic Unabridged Dictionary,* 55 (8th ed. 1996). Consequently, reading the statute as a whole, it is apparent that the Commonwealth may, at any time, initiate a prosecution for a *felony* that it asserts was committed in connection with a murder of the first or second degree. *See* 1 Pa.C.S.A. § 1921(a) (every statute construed to give effect to each of its provisions); *see also* 42 Pa.C.S.A. § 5551(4) (emphasis added). Therefore, Appellant is correct that the exception set forth at 42 Pa.C.S.A. § 5551(4) precluded the Commonwealth from initiating prosecution against her for cruelty to animals, 18 Pa.C.S.A. § 5511(a)(1)(i), a misdemeanor, because the language of the exception applies only to felonies. As such, we must

reverse Appellant's judgment of sentence for cruelty to animals. However, our inquiry does not end here.

¶ 13 We must consider whether the non-homicide felonies charged against Appellant in the present case were "alleged to have been perpetrated in connection" with the second-degree murder charges asserted against Appellant. In the present case, the Commonwealth charged Appellant under two separate criminal informations; the first for the homicide charges (including second-degree murder), and the second for the non-homicide charges. However, we are not troubled by the fact that the allegations of second-degree murder and the allegations of the commission of non-homicide felonies were presented in different charging documents.

■ ¶ 14 First, we observe that any criminal charge constitutes an "allegation" until proven at the conclusion of trial. It is often the case that a number of allegations arising from the same nucleus of operative fact are made by the Commonwealth against a defendant, and, also, it is often the case that these allegations are presented in separate charging documents. This is especially true where further charges become evident throughout the course of the Commonwealth's investigation of the event giving rise to the charges. The record reveals that the non-homicide felonies alleged by the Commonwealth against Appellant in the present case, *i.e.,* arson endangering persons, arson endangering property, conspiracy (arson), and causing a catastrophe, were alleged by the Commonwealth to have arisen from the same operative facts as the charge of second-degree murder. Further, the homicide charges (including second-degree murder) were tried jointly with the non-homicide felony charges. Accordingly, it is clear that the non-homicide felonies charged in this case were "alleged to have been perpetrated in connection with" the second-degree murder charges already charged against Appellant. *See* 42 Pa. C.S.A. § 5551(4).

■ ¶ 15 Moreover, contrary to Appellant's argument, it is irrelevant for purposes of our analysis that the jury acquitted her of second-degree murder. This is because the purpose of the statute of limitations is to limit an individual's *exposure* to criminal *prosecution* of charges made "stale" by the passage of time. *See Cardonick,* at 332, 292 A.2d at 407–8 (emphasis added). Indeed, our review of 42 Pa. C.S.A. § 5552 (limitations on other criminal offenses) indicates that the language of limitation for non-murder offenses speaks in terms of commencement of prosecution, not adjudication at trial. Consequently, the concern of the General Assembly in the statute of limitations lies with the commencement of the prosecution itself, not the ultimate verdict rendered against the individual. As such, it is not a great leap of logic to conclude that, in Pennsylvania, as long as an individual's exposure to prosecution of certain charges is permitted by law, the resulting verdict on each charge is sound regardless of the type of verdict reached against the individual. *See* 42 Pa. C.S.A. § 5551(4). Therefore, we are satisfied that, regardless of the verdict rendered for the second-degree murder charge, the statute of limitations did not preclude the prosecution of Appellant for the non-homicide felonies alleged by the Commonwealth in the present case. *See Cardonick,* at 332, 292 A.2d at 407–8. Therefore, Appellant's issue fails.

■ ¶ 16 Next, Appellant asserts that the trial court erred in denying her pretrial omnibus motion to suppress the statement she gave during a custodial interrogation. Our review of this issue is governed by the following standard:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Minnich,* 874 A.2d 1234, 1236 (Pa.Super.2005) (citation omitted).

¶ 17 Appellant argues that her statement should be suppressed because she asserted her right to remain silent and asserted her right to have her attorney present while she was questioned. *See, e.g., Edwards v. Arizona,* 451 U.S. 477, 481–82, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (Fifth and Fourteenth Amendment to U.S. Constitution require questioning to cease where putative defendant asserts right to remain silent; questioning must also cease if putative defendant asserts right to counsel, and questioning may resume only when counsel is present) (citation omitted). We disagree with Appellant's argument.

■ ¶ 18 In reality, Appellant's argument regarding her assertion of her right to counsel rests upon our review of the trial court's credibility assessments at the suppression hearing. Appellant testified at the suppression hearing that she told the police that she was represented by counsel and that she wanted to talk to her lawyer after her arrest. The arresting and interrogating detectives, on the other hand, each testified that Appellant did *not* 

invoke her right to counsel prior to or during questioning. Given that Appellant's testimony and the detective's testimony contradict, our standard of review precludes this Court from considering Appellant's present assertions of fact. *See Minnich,* 874 A.2d at 1236 (where prosecution prevailed at suppression hearing, Superior Court may consider only evidence of prosecution and so much of evidence presented by appellant as remains uncontradicted when read in context of the record as a whole). Further, our reading of the record indicates that the trial court's factual findings are supported by the record, and, as such, we cannot now overturn them. *Id.,* 874 A.2d at 1236.

¶ 19 Appellant's argument regarding her assertion of her right to remain silent is also without merit. The record indicates that Appellant told Detective Rush that she was angry with him for arresting her and that she was not going to talk to him. Approximately two hours later, Detective Rush inquired whether Appellant changed her mind and wanted to speak with him, and he requested Detective Dale Canofari to speak with Appellant. In turn, Detective Canofari spoke with Appellant, who then made incriminating statements to Detective Canofari.

■ ¶ 20 Subsequent police questioning after the invocation of a defendant's right to remain silent is not a *per se* violation of that right. Rather, the police may attempt to question a defendant a second time after the defendant's initial invocation of her right to remain silent in order to determine if the defendant wishes to speak further to the police voluntarily, where the police "scrupulously honor" the defendant's initial invocation of the right to remain silent. *See Commonwealth v. Mignogna,* 401 Pa.Super. 188, 585 A.2d 1, 5–6 (1990) (citation omitted). The question of whether the police have "scrupu-

lously honored" the defendant's right to remain silent focuses on the following considerations: (1) whether the defendant was advised of her *Miranda* rights before both interrogations; (2) whether the officer conducting the first interrogation immediately ceased the questioning when the defendant expressed his desire to remain silent; and (3) whether the second interrogation occurred after a significant time lapse, and whether it was conducted in another location by another officer. *Id.,* 585 A.2d at 6.

¶ 21 The record demonstrates unequivocally that the interrogating detectives advised Appellant of her *Miranda* rights, that Detective Rush ceased interrogating Appellant when she told him that she did not wish to speak with him, and that the second interrogation took place approximately two hours later with Detective Canofari acting as the interrogator. *See Mignogna,* 585 A.2d at 6. Likewise, the record indicates that Detective Canofari spoke with Appellant regarding her general background information and that, only after she agreed to speak with him about the fire, did he question her regarding her activities on the night of the fire. We are satisfied that the actions of Detectives Rush and Canofari did not violate Appellant's right to remain silent. *Id.,* 585 A.2d at 6.

¶ 22 Although the second interrogation did not occur in a different location than the first interrogation, this factor cannot be considered dispositive because there were no other facts demonstrating that the police acted coercively in order to force Appellant into abandoning her right to remain silent. *Cf. Mignogna,* 585 A.2d at 6 (focus of inquiry should be determination of whether the official purpose of resuming questioning was to entice the arrestee to abandon her right to remain silent or simply to find out whether she had a change

of mind). Likewise, Appellant's initial assertion of her right to remain silent was qualified, *i.e.,* she indicated to Detective Rush that she did not wish to speak with *him* because she was angry with *him* for arresting her. Here, in accordance with Appellant's stated preference, another detective spoke with her and did so in a neutral fashion after reiterating her *Miranda* rights. Consequently, it is clear that the actions of the detectives were not undertaken to entice Appellant into abandoning her right to remain silent but were instead undertaken to determine whether she changed her mind about speaking to them. *Id.,* 585 A.2d at 6. Accordingly, we are satisfied that Appellant's voluntary incriminating statements were not obtained in violation of her right to remain silent. *Id.,* 585 A.2d at 6. Therefore, Appellant's issue fails.

¶ 23 Appellant's third and fourth issues challenge the trial court's admission of prior bad acts evidence and its preclusion of certain testimony from her expert witness. Consequently, we will consider these issues jointly. Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. *Commonwealth v. Whitaker,* 878 A.2d 914, 923 (Pa.Super.2005).

¶ 24 Appellant contends that the trial court abused its discretion by permitting the Commonwealth to introduce evidence that, as a juvenile, she was involved in an incident in which an accelerant was used to start a fire in a juvenile detention facility. At trial, the Commonwealth sought to introduce the evidence of Appellant's involvement with an accelerant fire as a juvenile to demonstrate that she knew the liquid given to her by Fields was an accelerant from its smell and that it could be

used to set the dog on fire. At the conclusion of trial, the trial court issued a cautionary instruction to the jury directing it to consider the evidence as evidence of Appellant's knowledge of the use of accelerant only and not to infer her guilt from the prior incident.

¶ 25 Generally, evidence of prior bad acts is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes. *See Commonwealth v. Melendez–Rodriguez*, 856 A.2d 1278, 1283 (Pa.Super.2004). However, "prior bad acts" evidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character. *Id.*, 856 A.2d at 1283. It is well-established that reference to prior criminal activity of the accused may be introduced where the evidence is relevant to some purpose other than demonstrating defendant's general criminal propensity, such as to demonstrate the following: (1) motive; (2) opportunity; (3) intent; (4) preparation; (5) plan; (6) knowledge; (7) identity; or (8) absence of mistake or accident. *See* Pa. R.E. 404(b)(2). When utilized to demonstrate these factual questions in a criminal case, "prior bad acts" evidence is admissible only when its probative value outweighs its prejudicial effect. *See* Pa.R.E. 404(b)(3).

¶ 26 We are satisfied that the trial court did not abuse its discretion by admitting the evidence of Appellant's juvenile involvement with an accelerant fire. First, it is clear that the evidence of Appellant's knowledge of the nature of the liquid given to her was crucial for the Commonwealth to establish Appellant's intent to assist Fields in setting the dog on fire and thereby to prove Appellant's lia-

bility as an accomplice and co-conspirator. *See Melendez–Rodriguez*, 856 A.2d at 1283. Consequently, its probative value far outweighed its prejudicial effect. *See Commonwealth v. Fisher*, 452 Pa.Super. 564, 682 A.2d 811, 816–17 (1996). Moreover, after the evidence was admitted for this limited purpose, the trial court issued a cautionary instruction to the jury that explained to the jury how it should consider the evidence in arriving at its verdict. We presume that the jury followed this instruction and that it was sufficient to cure any possible prejudice resulting to Appellant by the admission of this evidence. *See Melendez–Rodriguez*, 856 A.2d at 1287. Accordingly, Appellant's argument fails.

¶ 27 Appellant's second evidentiary argument fares no better than her first. Appellant sought to introduce the testimony and report of Dr. Paul M. Bernstein, a psychologist, to demonstrate that she was subject to the corrupting influence of Fields, her elder co-defendant. This type of defense could be characterized only as a "diminished capacity" defense. *See Commonwealth v. Sasse*, 921 A.2d 1229, 1236–37 (Pa.Super.2007) (discussing "diminished capacity" defense). The "diminished capacity" defense is available only as a defense to first-degree murder and not to second-degree murder, which was the offense charged against Appellant. *See Commonwealth v. Swartz*, 335 Pa.Super. 457, 484 A.2d 793, 796 (1984). Likewise, it is not available as a defense for other "specific intent" non-homicide offenses. *Id.*, 484 A.2d at 796. Accordingly, Dr. Bernstein's report and testimony were not relevant to the issues being tried before the trial court, and, as such, the trial court did not abuse its discretion by precluding the jury from considering Dr. Bernstein's report or testimony. *Id.*, 484 A.2d at 796.[7]

7. Additionally, we note that Appellant failed     to file a notice of insanity or mental infirmity

¶ 28 Appellant's final contention is that the trial court abused its discretion by not charging the jury on the corruption of minors statute, which Appellant intended to use as a defense on her behalf. This issue is waived. In order to preserve for appeal a challenge to a jury charge, the defendant must lodge a specific objection or exception to the jury charge itself. *Commonwealth v. Pressley*, 584 Pa. 624, 631–32, 887 A.2d 220, 225 (2005). Appellant failed to make a specific objection or exception to the trial court's jury charge, and, as such, the issue is waived. *Id.*, at 631–32, 887 A.2d at 225. Accordingly, we dismiss this issue.

¶ 29 In conclusion, we affirm Appellant's judgment of sentence for arson endangering persons and related offenses, we reverse her judgment of sentence for cruelty to animals, and we discharge Appellant as

to her cruelty to animals conviction because the conviction violates the statute of limitations.[8]

¶ 30 Judgment of sentence affirmed in part, reversed in part. Jurisdiction relinquished.

¶ 31 DANIELS, J. files a Dissenting Opinion.

## DISSENTING OPINION BY DANIELS, J.:

¶ 1 Here, Appellant was charged with two counts of criminal homicide (18 Pa. C.S.A. § 2501)[9]. She was also charged with: two counts of arson endangering persons (18 Pa.C.S.A. § 3301(a)(1)(i) and (ii))[10], and one count each of causing a catastrophe (18 Pa.C.S.A. § 3302(a))[11], arson endangering property (18 Pa.C.S.A.

---

defense with the trial court. *See* Pa.R.Crim.P. 568(A)(1). The failure of Appellant to file the notice of insanity or mental infirmity defense authorized the trial court to exclude any evidence offered by Appellant to prove the mental infirmity defense of "diminished capacity." *See* Pa.R.Crim.P. 568(B)(1).

8. We need not remand for resentencing because the trial court did not impose a penalty for Appellant's cruelty to animals conviction. Accordingly, the trial court's sentencing scheme has not been altered by our holding. *See Commonwealth v. Williams*, 871 A.2d 254, 266–67 (Pa.Super.2005) (Superior Court will remand for resentencing if its holding alters trial court's sentencing plan).

9. **Criminal homicide:**
(a) Offense defined.—A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.
(b) Classification.—Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter.

10. **Arson endangering persons:**
(1) A person commits a felony of the first degree if he intentionally starts a fire or

causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:
(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; or
(ii) he commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another.

11. **Causing or risking catastrophe:**
(a) **Causing catastrophe.**—A person who causes a catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage, including selling, dealing in or otherwise providing licenses or permits to transport hazardous materials in violation of 75 Pa.C.S. Ch. 83 (relating to hazardous materials transportation), commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly.

§ 3301(c)(2)) [12], cruelty to animals (18 Pa. C.S.A. § 5511(a)(1)(i)) [13], and criminal conspiracy (18 Pa.C.S.A. § 903(a)(1)) [14].

¶ 2 After a jury trial, Appellant was acquitted of the criminal homicide charges, the criminal conspiracy charge, and the charge of arson endangering persons (pursuant to 18 Pa.C.S.A. § 3301(a)(1)(i)), which required a finding that Appellant "recklessly place[d] another person in danger of death or bodily injury" for conviction. However, she was found guilty of one count each of causing a catastrophe, arson endangering property, cruelty to animals, and arson endangering persons (18 Pa.C.S.A. § 3301(a)(1)(ii)), which required a finding that Appellant had "commit[ted] the act with the purpose of destroying or damaging an inhabited building or occupied structure of another" for conviction [15]. Appellant was subsequently sentenced to a term of eighteen (18) to sixty (60) months of imprisonment based upon such convictions.

¶ 3 Appellant has maintained, all along, that the statute of limitations barred her

prosecution for the non-homicide related offenses. Her omnibus pre-trial motion to dismiss all charges was denied, as was her post-trial motion to set aside the guilty verdicts on the non-homicide charges. This appeal addresses the issue of the trial court's failure to set aside the jury's guilty verdicts—on the ground that the applicable statute of limitations as to each bars these convictions.

¶ 4 Nevertheless, the majority has affirmed Appellant's convictions for one count each of three felonies: arson endangering persons pursuant to 18 Pa.C.S.A. § 3301(a)(ii), arson endangering property, and causing a catastrophe. As noted above, Appellant had also been charged with second-degree murder pursuant to the felony-murder doctrine, but the jury acquitted her of that crime, as well as of the alleged crime of arson endangering persons pursuant to 18 Pa.C.S.A. § 3301(a)(i).[16] Because I believe that the felonies of which Appellant was convicted by the jury were time-barred, I most respectfully dissent.

12. **Arson endangering property:**

A person commits a felony of the second degree if he intentionally starts a fire or causes an explosion, whether on his own property or that of another, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, and if:
(2) he thereby recklessly places an inhabited building or occupied structure of another in danger of damage or destruction.

13. **Killing, maiming or poisoning domestic animals or zoo animals, etc.:**

(1) A person commits a misdemeanor of the second degree if he willfully and maliciously:
(i) Kills, maims or disfigures any domestic animal of another person or any domestic fowl of another person.

14. **Criminal conspiracy:**

(a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent

of promoting or facilitating its commission he:
(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime.

15. As will be discussed *infra*, the distinction between the two forms of "arson endangering persons" is of moment here in that the jury's verdict of not guilty on the "personal injury" form of arson complements the jury's verdicts of not guilty on the homicide charges. Thus, not only was Appellant found not guilty of the killing of the two children, but she was also found to have been not guilty of the necessary *mens rea* to establish the recklessness of placing them in harm's way with respect to the "arson endangering persons" charge, as well.

16. The distinction between the two statutory forms of "arson endangering persons", discussed *supra* in footnotes 2 & 7, is a significant one within the context of this case and will also be further addressed, *infra*, in this Dissenting Opinion.

¶ 5 I do not dispute that the felonies here were, in the language of 42 Pa.C.S.A. § 5551(4), "alleged to have been perpetrated in connection with" the homicide charges. I do, however, most strenuously take issue with the majority's conclusion that the Appellant's acquittal on the homicide charges is irrelevant to whether these other "alleged felonies" were time-barred.

¶ 6 The majority relies upon *Commonwealth v. Cardonick*, 448 Pa. 322, 292 A.2d 402 (1972), for the proposition that the commencement of prosecution, rather than judicial conclusion of the same, is the key point in determining whether the statute of limitations may be ignored with regard to the felonies "alleged" to have been perpetrated in connection with a murder of the first or second degree. However, it should be noted at the outset that *Cardonick* did not deal with first or second degree murder at all, but rather with allegations of forgery and attempted tax evasion. Additionally, the question in *Cardonick* was whether an initial set of indictments, although subsequently quashed, tolled the statute of limitations such that a second set of indictments, which would otherwise have been time-barred, were not violative of the statute of limitations. These two aspects of *Cardonick* alone make it inapposite to the factual context in the case at Bar. Finally, we note that in *Cardonick*, the Supreme Court of Pennsylvania not only expressed the view that statutes of limitations are to be liberally construed in favor of defendants and against the Commonwealth, but ultimately reversed this Court's orders affirming the judgments of sentence and found in favor of the defendants in that case. *Cardonick*, 448 Pa. at 330, 292 A.2d at 407.

¶ 7 Courts in other jurisdictions have addressed this very issue, and I find their decisions and reasoning to be most compelling. In *People v. Nunez*, 319 Ill.App.3d 652, 253 Ill.Dec. 516, 745 N.E.2d 639 (Ill. App. 1 Dist.2001), defendant was charged with two counts each of first degree murder and felony murder predicated upon an underlying felony of aggravated battery. Following a bench trial, defendant was found guilty of only the underlying felony of aggravated battery. He appealed based upon his claim that the prosecution for aggravated battery was time barred. The Appellate Court of Illinois addressed, at length, the issue of whether or not defendant had waived his right to raise the defense of the statute of limitations as to the aggravated battery charge, but once it decided that he had not in fact waived that right, it reversed his conviction by stating:

> We are mindful that the murder statute has no statute of limitations; however, . . . [w]ithout such waiver, defendant was improperly subjected to criminal liability when the trial court entered a finding of guilty on the lesser included offense of aggravated battery . . . Defendant was acquitted on the charges of murder and felony murder; therefore, double jeopardy prohibits retrial on these charges. Further, *defendant's conviction of the lesser included offense of aggravated battery violates the statute of limitations.*

*Nunez*, 253 Ill.Dec. 516, 745 N.E.2d at 645, 646, 647 (Emphasis Added).

¶ 8 Similarly, the Supreme Court of New Jersey addressed this issue in *State v. Short*, 131 N.J. 47, 618 A.2d 316 (N.J. 1993). In that case, the defendant was indicted for murder and the jury was instructed on the murder charge, as well as on the lesser included manslaughter offenses (which, at that time, was subject to a five-year period of limitations). The Supreme Court of New Jersey upheld the trial court's decision to allow the defendant to "preserve his right under the applicable statute of limitations not to be convicted

for manslaughter in the event that the jury returned a verdict of guilty on a form of manslaughter." *Short,* 618 A.2d at 320. In that connection, the Supreme Court of New Jersey observed:

> [I]n New Jersey, the *statute of limitations in a criminal statute is tantamount to an absolute bar to the prosecution of the offense* ... the statutory bar would apply when manslaughter is sought to be charged as a lesser included or alternative offense to a greater or still more serious crime.
>
> . . .
>
> [W]e are unable to conclude that the Legislature intended to weaken the strength of the bar of the statute of limitations in criminal causes generally or, more specifically, to do so with respect to un-indicted lesser included offenses.

*Short,* 618 A.2d at 320, 321 (Emphasis Added).

¶ 9 Here, as noted above, Appellant never waived her right to assert the defense of the statute of limitations. She raised it in her omnibus pre-trial motion to dismiss all charges against her, which was denied by the trial court prior to the commencement of trial. She reasserted such defense once again in her post-trial motion to set aside the jury's guilty verdicts on the non-

homicide related charges of which she was found guilty by the jury. As the Illinois and New Jersey cases referenced above, as well as others [17], illustrate, the defense of the statute of limitations is a significant one that may not be "blithely ignored" by courts. *State v. Short,* 618 A.2d at 320. Here, both the majority opinion and the opinion of the trial court "blithely ignore" the jury's verdict, which acquitted Appellant of the criminal homicide charges and the "reckless endangerment of another person" arson charge referenced at 18 Pa. C.S.A. § 3301(a)(1)(i) [18]. Far from "changing" the applicable statute of limitations (Trial Court Opinion, p. 4), the jury's verdicts of not guilty on the homicide and "reckless endangerment of persons" arson charges mandate that the applicable statute of limitations as to the other non-homicide related charges (of which Appellant was found guilty by the jury) be upheld and legally enforced.

¶ 10 The jury's verdict of not guilty on the criminal homicide charges triggered Appellant's right to re-assert the defense of the statute of limitations with regard to the underlying (non-homicide) felony charges. In the words of this Court, the statute of limitations became a "material element" of judicial inquiry following the jury's not guilty verdicts as to the homicide charges in this case. *Commonwealth*

---

**17.** *See also Cowan v. People,* 14 Cal.4th 367, 58 Cal.Rptr.2d 458, 926 P.2d 438 (1996) (holding that in the plea agreement context, a defendant may intentionally waive his or her otherwise protected right to claim the statute of limitations defense for a lesser offense such as manslaughter in order to avoid prosecution for a more serious murder offense that lacks a limit for prosecution.); *People v. Verbrugge,* 998 P.2d 43 (Colo.Ct.App.1999) (holding that in the retrial context, if the second jury has acquitted the defendant of a felony murder charge, the trial court cannot enter judgment on the first jury's conviction on lesser non-included offense where the statute of limitations for that offense had expired.); *People v.*

*Jung,* 2001 Guam 15 (Guam 2001) (implying that the defense of statute of limitations is available and valid as long as indictment for greater offenses occurs after the limitations period for the lesser offenses has expired); and *State v. Seagraves,* 837 S.W.2d 615 (Tenn. Crim.App.1992) ("In jurisdictions which adhere to the lesser included offense doctrine, the indicted offense only embraces the lesser included offenses that are actionable. The greater offense does not embrace a lesser included offense which is barred by the statute of limitations.").

**18.** *See* footnote no. 2, *supra.*

*v. Munchinski,* 401 Pa.Super. 300, 585 A.2d 471, 483 (1990). The statute of limitations for causing a catastrophe is *two years;* arson and conspiracy charges must be prosecuted within *five years*.[19] Thus, the time within which Appellant could have been prosecuted for these crimes, but for the Commonwealth's decision to prosecute her for felony-murder in connection therewith, would have expired in July, 1992 and July, 1995, respectively. Thereafter, in this writer's view, any prosecution on these non-homicide charges was time barred. It would be manifestly unfair and a distortion of the law to hold otherwise.

¶ 11 From the standpoint of interpreting 42 Pa.C.S.A. § 5551(4), I also disagree with the majority's conclusion. The majority's interpretation and reasoning would permit the prosecution, *at any time,* of "any felony alleged to have been perpetrated in connection with a murder of the first or second degree . . .". The majority writes that "it is apparent that the Commonwealth may, at any time, initiate a prosecution for a felony that it asserts was committed in connection with a murder of the first or second degree." Because, the majority continues, "any criminal charge constitutes an 'allegation' until proven at the conclusion of trial . . . it is clear that the non-homicide felonies charged in this case were 'alleged to have been perpetrated in connection with' the second-degree murder charges already charged against Appellant." Such conclusion, in my reasoning, "puts the cart before the horse".

¶ 12 My reading of Section 5551(4) focuses on the statute's use of "alleged" in only one instance—to refer to the non-murder felony or felonies at issue. Interestingly, the statute does not also use "alleged" to refer to the murder at issue. If, instead, the statute were to say that prosecution could be commenced at any time

for "any felony alleged to have been perpetrated in connection with *an alleged murder* of the first or second degree" (Emphasis Added), then its words would appropriately mirror the facts here. However, such is not the case. As it now reads, the statute is clearly ambiguous without the use of an additional "alleged". As such, this ambiguous statutory language should thus be construed in favor of the defendant and against the Commonwealth until such time as the legislature may choose to clarify the language of the statute.

¶ 13 Put another way, the language of Section 5551(4) pre-supposes that the substantive crime of first or second degree murder will be proven beyond a reasonable doubt, in order to support the conviction of any felony that has been "alleged" to have been perpetrated in connection with the murder of the first or second degree. Absent such a conviction of first or second degree murder, the "felony alleged" should rise or fall on the basis of its own substantive statute of limitations. For, absent that allegation in the first instance, a stale or time-barred felony prosecution would not withstand the jurisdictional challenge of the statute of limitations. The prosecution would then enjoy an unlimited period of time within which to achieve a conviction of such "alleged felonies", even if the murder charge itself could not be proven beyond a reasonable doubt.

¶ 14 Finally, the jury acquitted Appellant on the form of arson endangering persons as embodied in 18 Pa.C.S.A. § 3301(a)(1)(i), which, as noted above, requires a showing of *mens rea* on the part of the defendant, specifically "recklessness". This must be viewed in contrast to the form of arson endangering persons that Appellant was, in fact, convicted of, as

---

19. 42 Pa.C.S.A. § 5552.

embodied in 18 Pa.C.S.A. § 3301(a)(1)(ii). This latter variation does not require such a showing of *mens rea*. This distinction is of some import here, as it represents the jury's conclusion that not only was Appellant not guilty of the second-degree murder of the two children, but she was also not proven beyond a reasonable doubt to have had the reckless intent to place the children in harms way, nor of or any mindset whatsoever thereof.

¶ 15 Consequently, there is no rhyme or reason in permitting a conviction for an "alleged felony" to stand, beyond its own period of limitation, if the murder in the first or second degree itself is not proven beyond a reasonable doubt to the satisfaction of the fact finder. For, to reason otherwise would permit a prosecutor to selectively allege that felonies "[had] been committed in connection with a murder of the first or second degree," *without any reasonable belief that the murder itself could be proven*, in order to support a conviction of "any felony alleged to have been perpetrated" in connection with a charge of first or second degree murder, even if it were clear that the murder charge itself could not be proven beyond a reasonable doubt.

¶ 16 Such would set a very dangerous precedent, in my view. Nor do I believe that the Pennsylvania Legislature intended to create such a "Catch–22", absent the Commonwealth's ability to prove a defendant guilty beyond a reasonable doubt of first or second degree murder as a predicate to obfuscating such defendant's right to raise the jurisdictional defense of the statute of limitations as to those felonies that would, in fact, be time barred.

¶ 17 Thus, I respectfully and most vociferously dissent.