J-S66022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| QUINTEZ TALLEY | |
| Appellant | No. 1917 MDA 2015 |

Appeal from the Judgment of Sentence July 2, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001720-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| QUINTEZ TALLEY | |
| Appellant | No. 1918 MDA 2015 |

Appeal from the Judgment of Sentence July 2, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001721-2014

BEFORE:  BOWES, J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                **FILED OCTOBER 31, 2016**

Appellant, Quintez Talley, appeals from the judgment of sentence entered on July 2, 2015, in the Court of Common Pleas of Centre County. We affirm.

The Commonwealth charged Talley in criminal informations with one count each of aggravated harassment by prisoner, 18 Pa.C.S.A. § 2703.1.

The counts arise from two separate incidents. The first stems from Talley's actions on June 5, 2014. On that date, the Commonwealth alleged that Talley was an inmate at SCI Benner Township, housed in a psychiatric observation cell. When Correctional Officer Thomas Suchta approached Talley's cell, Talley threw urine on him, soaking the officer from his head to his toes. The other stems from Talley's actions on June 18, 2014. On that date, the Commonwealth alleged that Talley resided in the restricted housing unit of the same correctional institution. When Correctional Officer Robert Hewitt approached his cell, Talley splashed urine underneath the cell door, soaking the officer's boots, pants, and shirt.

The case proceeded to pre-trial matters. The Commonwealth filed notice of its intention to consolidate and try the separate informations together. Talley acted in his own defense with standby counsel. Talley filed a slew of motions, including motions *in limine* and a motion to sever. The trial court scheduled a hearing on the motions. On the day of the hearing, however, Talley refused to participate. Citing Talley's refusal to participate in his own case, his standby counsel indicated that he would only address the motions if the Commonwealth "do[es] something flat out wrong or egregious." N.T. Hearing, 4/29/15, at 8. The trial court and then the Commonwealth then went through Talley's motions. The trial court ultimately denied all eleven motions.

Immediately prior to trial, Talley again advanced argument on some of his motions *in limine*. The trial court acted with incredible patience in dealing with Talley. **See** N.T., Trial, 5/6/15, at 3-32. Frustrated that the proceedings were not going his way, Talley voluntarily absented himself from the trial. The jury trial proceeded in his absence.

The Commonwealth presented the testimony of Correctional Officers Suchta and Hewitt who both testified that Talley threw urine on them. Correctional Officer Thomas Lykens testified that he observed Talley throw, from a milk container, a liquid substance toward Correctional Officer Suchta. He then heard Talley say to Correctional Officer Suchta, "I got you, man." N.T., Trial, 5/6/15, at 87. Talley asked Correctional Lykens if he got any on him as his intended target was only Correctional Officer Suchta. And he heard Talley taunt Correctional Officer Suchta later that day by asking him, "[w]hy are you walking around with piss on your shirt[?]" **Id**., at 88. The jury also saw surveillance footage of the incidents. And the Commonwealth presented the testimony of Pennsylvania State Police forensic scientist Gabriel Llinas who testified as an expert witness. Llinas stated that he conducted tests on Correctional Officer Suchta's pants and Correctional Officer Hewitt's shirt and obtained positive results for the presumptive presence of urine on both items.

The jury quickly (it took just thirteen minutes of deliberation) returned a verdict of guilty to two counts of aggravated harassment by prisoner.

The trial court later imposed an aggregate sentence of 4½ to 9 years' imprisonment. Talley filed a post-sentence motion and a supplemental post sentence motion, which the trial court denied after a hearing. This timely appeal followed.

Talley first argues that the trial court erred in denying his motion to sever.

> [A] motion for severance is addressed to the sound discretion of the trial court, and ... its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether [the] appellant was prejudiced by the trial court's decision not to sever. [The a]ppellant bears the burden of establishing such prejudice.

*Commonwealth v. Dozzo*, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted) (alterations in original).

To address Talley's challenge, we must determine:

> [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative; [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Boyle*, 733 A.2d 633, 635 (Pa. Super. 1999) (citation omitted) (alterations in original). *See also* Pa.R.Crim.P. 582 and 583.

Accordingly, our first step is to determine whether the evidence regarding each incident would be admissible in a separate trial for the other. It is impermissible to present evidence at trial of a defendant's prior bad acts or crimes to establish the defendant's criminal character or proclivities. *See*

- 4 -

*Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa. Super. 2008). Such evidence, however, may be admissible "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Russell*, 938 A.2d 1082, 1092 (Pa. Super. 2007) (citation omitted). The Rules of Evidence specifically provide that "[e]vidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proving … intent … [the] absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

Here, we have little difficulty in concluding that the evidence of each crime would be admissible in a separate trial for the other. The evidence of each would be admissible as each incident was relevant to establish an absence of mistake or accident by demonstrating that Talley intentionally threw his urine on the correctional officers. Talley's proposed defense to the incident involving Correctional Officer Thomas Suchta was that he did this to himself—that after urinating he "shook a little too hard." N.T., Trial, 5/6/15, at 10. *See also id*. ("Come on, he shook a little too hard.") Evidence that Talley also threw urine on Correctional Officer Hewitt would squarely refute that defense.

The Commonwealth alleged that each incident was preceded by Talley's displeasure with the correctional officers: that Correctional Officer Suchta did not feed Talley and that Talley was annoyed when Correctional

- 5 -

Officer Hewitt stopped by his cell to ask how he was. Thus, evidence of each incident shows intent.

And, importantly, the evidence was not admitted merely to show Talley acted in conformity with a character trait.

The next step is to determine whether joinder of the offenses for trial posed a danger of confusing the jury. "Where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence." *Commonwealth v. Collins*, 703 A.2d 418, 423 (Pa. 1997) (citation omitted). Here, the crimes occurred at different times and involved different victims; there was no danger of confusing the jury with evidence of each crime.

Finally, we must determine whether joinder of the offenses for trial unfairly prejudiced Talley.

> The "prejudice" of which Rule [583] speaks is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of *all* Commonwealth evidence. The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

*Commonwealth v. Newman*, 598 A.2d 275, 279 (Pa. 1991) (citation omitted).

We can discern no unfair prejudice to Talley in joining the two offenses for a single trial. In his brief, Talley methodically defines unfair prejudice and

then simply concludes that "[i]t is difficult to overstate the prejudice caused by exposing the same jury to two separate allegations of throwing urine on another person." Appellant's Brief, at 13. This *conclusion* in no way *establishes* unfair prejudice. The burden is squarely on Talley and he fails to establish unfair prejudice.

Talley next argues that the trial court erred in denying his motion *in limine* to preclude the Commonwealth from presenting evidence that he called correctional officer Hewitt a "fucking cracker." **Id**.[1]

> In evaluating the denial … of a motion *in limine,* our standard of review is well-settled. When ruling on a trial court's decision to grant or deny a motion *in limine,* we apply an evidentiary abuse of discretion standard of review. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. If the evidentiary question is purely one of law, our review is plenary.

**Commonwealth v. Belani**, 101 A.3d 1156, 1160 (Pa. Super. 2014) (internal citations and quotation marks omitted).

Talley maintains that this evidence, which he concedes was relevant, **see** Appellant's Brief, at 13, was unfairly prejudicial. Talley explained his fear about this evidence:

---

[1] For an explanation of the meaning of this homonym, we refer the reader to "The Secret History of the Word 'Cracker,'" National Public Radio, available at http://www.npr.org/sections/codeswitch/2013/07/01/197644761/word-watch-on-crackers (accessed October 13, 2016).

I even have a motion where I just merely asked you can we [sic] exclude the part where the COs are going to say that he called them a cracker, and that was denied.

So I don't know. I guess at a later date I'll be able to argue racial prejudice and all of that, but I don't understand how that motion was denied.

That's a simple request where you're going to have a CO come before an all white [sic] jury and say in this room he called me a cracker. Okay, lock him up.

In all honesty, I'm a little distraught at this point. I'm coming before a white judge, a white jury, a white district attorney, white State troopers. It's not rocket science; my black ass is about to get found guilty.

N.T., Trial, 5/6/15, at 8. In his brief, Talley states that evidence of the epithet "fucking cracker" when he appeared "before an all-white jury" "was particularly prejudicial." Appellant's Brief, at 13.

"The court may exclude relevant evidence if its probative value is outweighed by a danger of … unfair prejudice…." Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id*., *Comment*.

The Commonwealth presented overwhelming evidence in this case: The two victims testified, an eyewitness testified, the jury watched surveillance videos, and an expert testified to the presumptive presence of urine. Against this evidentiary background we cannot conclude that the use of the racial epithet resulted was unfairly prejudicial. The trial court did not

abuse its discretion in permitting the Commonwealth to introduce evidence of Talley's use of the epithet.

Lastly, Talley argues that the Commonwealth presented insufficient evidence to sustain the convictions "or, alternatively,"[2] that the verdict was against the weight of the evidence. Appellant's Brief, at 13. We disagree.

We begin with the sufficiency of the evidence.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[2] The "or, alternatively," language is key as Talley combined these two distinct legal concepts into one issue: "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Lewis***, 911 A.2d 558, 566 (Pa. Super. 2006) (citation omitted).

***Commonwealth v. Hansley***, 24 A.3d 410, 416 (Pa. Super. 2011) (citations omitted).

Talley maintains that the Commonwealth failed to prove that the substance thrown was urine as required for conviction under § 2703.1. Both Correctional Officer Suchta and Correctional Officer Hewitt testified that Talley threw a substance on them that, by smell, they immediately identified as urine. ***See*** N.T., Trial, 5/6/15, at 77-79; 94-96. Correctional Officer Thomas Lykens testified that he observed Talley throw, from a milk container, a liquid substance toward Correctional Officer Suchta. ***See id***., at 87. He then heard Talley say to Correctional Officer Suchta, "I got you, man." ***Id***. Correctional Officer Lykens testified that Talley taunted Correctional Officer Suchta by asking him, "[w]hy are you walking around with piss on your shirt." ***Id***., at 88. Correctional Officer Lykens further testified that Talley, who had no beef with him, expressed concern about possibly hitting him in the attack, asking, "I didn't get you, you sure I didn't get you[?]" ***Id***., at 90. The jury watched surveillance footage of both incidents. ***See id***., at 80-82; 98-99. And the Commonwealth's expert witness testified that testing revealed the presumptive presence of urine on Correctional Officer Suchta's pants and Correctional Officer Hewitt's shirt. ***See id***., at 121, 124.

We have very little difficulty in finding that the Commonwealth presented sufficient evidence to sustain the convictions.[3] We next address Talley's claim that the verdict is against the weight of the evidence.

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. **See Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003). As an appellate court, we cannot substitute our judgment for that of the finder of fact. **See id**. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense

---

[3] Talley argues in his brief that the Commonwealth failed to prove that the substance was urine because the presumptive test "was arguably less accurate than a PBT [preliminary breath test] (which can at least tell us that alcohol, and not something else, was present)…." Appellant's Brief, at 14. There are serious flaws in this argument, which we need not address here. Talley did not advance this argument, flawed as it is, in the court below. **See** Pa.R.A.P. 302(a). He lodged no objection to the expert's testimony. We find this claim waived.

This claim is at direct odds with Talley's position in the trial court. In his "Petition for Writ of Habeas Corpus/Motion to Quash," filed when he was proceeding *pro se*, Talley had no objection to the presumptive testing procedure itself. For instance, Talley noted that such testing was the "'generally accepted' standard" scientific test and that the presence of urine "is usually proven by 'presumptive testing.'" Motion, 4/23/15, at 2-3. He did note that such testing had its "flaws," which he did not detail. The final two pages of his motion are a rambling discourse about how men urinate, what was tested and what should have been tested, and the alleged late filing of the serologist's report, which he claimed warrants quashing of the evidence.

of justice. **See Commonwealth v. Passmore**, 857 A.2d 697, 708 (Pa. Super. 2004).

A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." **Commonwealth v. Davidson**, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted), **aff'd**, 938 A.2d 198 (Pa. 2007).

Furthermore,

where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Champney**, 832 A.2d at 408 (citation omitted).

The trial court found that the verdict did not shock its sense of justice. We find no abuse of discretion with this conclusion. The figure of Justice is firmly rooted to her pedestal in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/31/2016