**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD OCKIMEY, | |
| Appellant | No. 452 EDA 2015 |

Appeal from the Judgment of Sentence October 8, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0005688-2013

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:**FILED APRIL 29, 2016**

Appellant, Ronald Ockimey, appeals from the judgment of sentence imposed pursuant to his jury conviction of murder of the third degree, conspiracy to commit murder, and violation of the Uniform Firearms Act. We affirm.

The trial court aptly set forth the factual and procedural history of this case, as follows:

> On April 11, 2012, at approximately 5:00 P.M., Markel Wright (Wright) was shot and killed at 53rd and Greenway Streets, in the City and County of Philadelphia. [Wright] was leaving a corner store when the Appellant and others engaged in a shootout on the public street.

---

[*] Retired Senior Judge assigned to the Superior Court.

The shooting was a part of an ongoing dispute between the Backstreet Boys and the Greenway Boys. Earlier on the day of the shooting, a number of males who were associated with the Backstreet Boys armed themselves with guns and gathered at the home of Ms. Vicki Dunbar (Dunbar) at 1647 South Wilton Street. Co-defendant Leon Owens (Owens)[1] was present and was among the armed males. Terrence Matthews (Matthews) . . . placed a telephone call to Appellant, who lived in the northeast section of Philadelphia. Appellant, who was related to some of the people who are a part of the Backstreet Boys, arrived at Dunbar's home with a friend. Both Appellant and his friend were armed and they joined the other males who were already at the Wilton Street address. One of the males at the house, Lonnie, told the others who were gathered that two (2) males from the Greenway group named Tyreek Brown (Brown) . . . and Tyrell Artis (Artis) . . . had guns and had been giving Lonnie trouble.

[] Owens said that the Backstreet group should go to Greenway Street and shoot Brown and Artis and shoot-up the rest of the block. Appellant, [] Owens and another male walked to 53rd and Greenway Streets. On the way to Greenway Street, Appellant, Owens, plus the male[,] stopped inside the Trendsetters Bar, located at 53rd and Woodland Avenue. [] Owens was a regular at this bar and was known to the bar owner, Anthony Taylor (Taylor). When the three (3) men left, they headed toward the intersection of 53rd and Greenway. Shortly after the three (3) males left the bar, Taylor heard shots and went outside to investigate. Taylor saw three (3) males, including Owens, running down the street away from Greenway Street. Surveillance cameras located both inside and outside of the bar captured the men entering and exiting the bar.

Warren Stokes (Stokes) plus three (3) males, including Wright[,] were inside of the 8 Brothers Food Market located at the intersection of 53rd and Greenway Streets when Appellant, [] Owens[,] and a third male approached the intersection. Stokes exited the corner store while Wright and the two (2) males remained inside. Stokes was talking to someone outside of the store when he heard gunfire and saw Wright leave the

_____

[1] Owens filed a separate appeal in this matter at docket number 532 EDA 2015.

- 2 -

store. Wright was struck by a bullet, which caused him to fall to the curb. Stokes went to assist [Wright] and called 911. Soon thereafter, a passerby placed a sweatshirt under [Wright's] head [].

Wright was pronounced dead at 6:00 P.M. at the Hospital of the University of Pennsylvania. An autopsy performed by Assistant Medical Examiner Dr. Edwin Lieberman found that Wright was shot one (1) time in the right flank, and the bullet travelled upward through his body before exiting through the lower left eyelid. The cause of death was found to be a single gunshot wound, and the manner of death was found to be homicide. Seventeen (17) fired cartridge casings were recovered from the crime scene.

On November 2, 2012, after having been given his **Miranda**[2] warnings, Appellant gave a statement to the homicide detectives in which he outlined his part in the shooting. Appellant confirmed that he had been at the house on Wilton Street and that he, Owens[,] and another male walked toward 53rd and Greenway, stopping at a bar along the way. Appellant stated that when they approached the corner store, he saw two (2) men exiting the store and Appellant believed that the males from the store were pulling guns, so when the gunfire started Appellant shot in their direction four or five (4-5) times. Appellant further said that he did not know the males who were shooting, and that he fired his weapon because the others fired at him and he was trying to protect himself. During the interview Appellant was shown video footage from the internal and external Trendsetters Bar surveillance cameras and identified himself in both videos. Appellant said that both of the other males who were with him were also firing toward the males at the corner store.

On November 15, 2012, Appellant gave a second statement after again having been read his **Miranda** warnings. Again, Appellant confirmed his intention to back up . . . Owens and to shoot Greenway Boys if they were found . . . on April 11, 2012.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

(Trial Court Opinion, 7/28/15, at 4-6) (quotation marks omitted).

On June 11, 2014, the jury convicted Appellant of the aforementioned charges. The trial court sentenced him to an aggregate term of not less than twenty-three nor more than fifty years' imprisonment on October 8, 2014. Timely filed post-sentence motions were denied by operation of law on February 9, 2015. *See* Pa.R.Crim.P. 720(B)(3)(a). Appellant appealed.

On March 18, 2015, a panel of this Court allowed Appellant's retained counsel to withdraw and ordered the trial court to determine Appellant's eligibility to receive court-appointed counsel. The trial court found Appellant eligible for court-appointed counsel on March 23, 2015, and appointed an attorney to represent him on appeal. On May 18, 2015, appointed counsel filed a timely court-ordered Rule 1925(b) statement after the court granted him an extension of time within which to do so. *See* Pa.R.A.P. 1925(b). The court filed an opinion on July 28, 2015. *See* Pa.R.A.P. 1925(a). The matter is now ready for disposition.

Appellant raises eight questions for our review, plus two subparts:

1. Was the evidence sufficient to support the verdict of third degree murder where:

> [A]. The shooting was a result of heat of passion, where the killing of a friend and ongoing tensions and violence, requiring the Appellant to be hyper-vigilant at all times for fear that his life might be taken, brought about a combination of rage, resentment, and terror such that any young man in his position would become impassioned to the extent that his mind was rendered incapable of cool reflection, and;

[B]. The killing was properly understood as an incident of involuntary manslaughter, for the reasons argued by trial counsel at N.T. June 6, 2014, pp. 219-[]20?

2.      Did the trial court err in denying the Appellant's motion for a mistrial due to the outburst of [Wright's] mother . . . in the presence of the jury?

3.      Did the trial court err in denying the Appellant's motion for a mistrial based on an outburst from a member of the audience who was associated with the Appellant who loudly stated her recognition of juror number five?

4.      Did the trial court err in denying the Appellant's motion for a mistrial based on the Commonwealth's breaking redaction during closing arguments?

5.      Did the trial court err in denying the Appellant's motion to suppress his statement, where his waiver of his rights was not knowing, intelligent, and voluntary, and was the result of the use of solitary confinement to "soften up" the Appellant, thus rendering the statement involuntary and properly subject to suppression?

6.      Did the trial court err in granting the Commonwealth's motion to suppress drugs found near [Wright], as they support an inference that he was a member of an armed criminal conspiracy with . . . Artis and . . . Brown to sell drugs and dispute drug turf with weapons, and where exclusion of the narcotics evidence encouraged the jury to view [Wright] as an innocent bystander rather than as a member of an armed group of narcotics traffickers, thus unfairly playing upon the sympathies of the jury while at the same time excluding a relevant factor as to whether the Appellant and his co[-]defendants had good reason to fear [Wright] while they were receiving fire from [Wright's] armed co-conspirators?[3]

---

[3] We remind counsel that Pennsylvania Rule of Appellate Procedure 2116(a) mandates that "[t]he statement of questions involved must state **concisely**
*(Footnote Continued Next Page)*

7.   Did the trial court err in denying the Appellant's request for a jury instruction based on **Commonwealth v. Fowlin**, 710 A.2d 1130 (Pa. 1998)[,] and the Appellant's request for a jury instruction as to involuntary manslaughter?

8.   Did the trial court err and abuse its discretion in imposing an unduly harsh and excessive sentence, as argued in timely post—sentence motions?

(Appellant's Brief, at 4-5) (most capitalization omitted).

Appellant's first issue challenges the sufficiency of the evidence to support his conviction of murder of the third degree.  (**See id.** at 4, 15-19).

This issue is waived and would lack merit.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail."  Pa.R.A.P. 2116(a) (emphasis added).

***Commonwealth v. Harden***, 103 A.3d 107, 111 (Pa. Super. 2014) (citation omitted).

"Pursuant to the Pennsylvania Crimes Code, '[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.'" ***Commonwealth v. Thompson***, 106 A.3d 742, 756 (Pa. Super. 2014) (quoting 18 Pa.C.S.A. § 2501(a)). "[T]hird[-]degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." ***Id.*** at 757 (citation omitted).

> Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

***Id.*** (citations omitted).

We first observe that Appellant appears to misapprehend our standard of review. He argues that the evidence supports manslaughter convictions, but fails to explain why it was insufficient to support the elements of third degree murder. (***See*** Appellant's Brief, at 15-19). Although Appellant makes the bald assertion that the Commonwealth failed to prove malice, he provides no pertinent law or discussion of the elements of third degree murder. (***See id.***). Therefore, this issue is waived. ***See Commonwealth v. Samuel***, 102 A.3d 1001, 1005 (Pa. Super. 2014) (finding appellant

waived sufficiency claim where he failed to "specifically discuss the elements of the crime and identify those which he alleges the Commonwealth failed to prove.") (citation omitted).

Moreover, it would not merit relief. In explaining its reasoning for finding the evidence sufficient to support the third-degree murder conviction, the court explained:

> [T]he Commonwealth presented evidence through the statement of Appellant and surveillance video to establish that Appellant joined other males in firing guns toward 53rd and Greenway [Streets]. The shooting on a public street resulted in the death of Wright and established the elements of third [d]egree murder.
>
> Appellant described his involvement in Wright's death in two [] detailed statements to police. Appellant said that he was armed when he volunteered to accompany [] Owens to find the Greenway Boys and confront them. (*See* N.T. Trial, 6/06/14, at 114-15). [He stated that was aware of the dispute between the Backstreet Boys and the Greenway Boys and that he brought a gun "[j]ust in case anything went off." (*Id.* at 119).] Appellant identified himself in stills from the interior and exterior surveillance cameras of Trendsetters Bar, where the three [] men made a stop before arriving at their destination of 53rd and Greenway Streets. (*See id.* at 75). In addition, Appellant stated that he did not know Wright before he and Owens opened fire on him and killed him. (*See id.* at 113). Appellant intentionally aided [] Owens and the third male in facilitating the commission of [m]urder and thus is legally accountable for the death of Wright. . . . [4]

(Trial Ct. Op., at 9-10) (citation formatting and some citation provided).

_____

[4] We observe Appellant does not make any argument about accomplice liability. (*See* Appellant's Brief, at 15-43).

After our independent review of the record, we agree with the trial court's finding that the Commonwealth produced sufficient evidence to support the elements of murder of the third degree where the armed Appellant voluntarily and intentionally accompanied Owens to ambush the Greenway Boys, and then fired on them. *See Harden*, *supra* at 111.[5] Appellant's first issue would lack merit, even if not waived.

In Appellant's second through fourth issues, he maintains that the trial court erred in denying his motions for a mistrial. (*See* Appellant's Brief, at 4, 19-24). We disagree.

Our standard of review of a trial court's denial of a mistrial is as follows:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

---

[5] Moreover, Appellant's claim that the Commonwealth failed to offer sufficient evidence to establish that he did not act in self-defense is waived for his failure to include this allegation in his Rule 1925(b) statement. (*See* Appellant's Rule 1925(b) Statement, 5/18/15, at unnumbered pages 1-2); *Commonwealth v. Elia*, 83 A.3d 254, 263 (Pa. Super. 2013), *appeal denied*, 94 A.3d 1007 (Pa. 2014) (waiving and declining to review Appellant's claim for failure to include it in Rule 1925(b) statement); *see also* Pa.R.A.P. 1925(b)(4)(vii).

***Commonwealth v. Caldwell***, 117 A.3d 763, 774 (Pa. Super. 2015) (*en banc*), *appeal denied*, 126 A.3d 1282 (Pa. 2015) (citation omitted).

In his second issue, Appellant maintains that the court erred when it denied his motion for a mistrial made after the outburst of Wright's mother in the presence of the jury. (***See*** Appellant's Brief, at 19-21). Appellant's claim lacks merit.

> [I]n the area of bystander misconduct, we have held that it is primarily within the trial judge's discretion to determine whether the defendant was prejudiced by the misconduct. Further, [w]hether and to what extent relief is due from an incident such as an emotional outburst in the courtroom is within the discretion of the trial court, and unless the unavoidable effect of the incident is to deny the defendant a fair trial, there is no error. Prejudice that might result from a spectator outburst can be cured through a remedial instruction to the jury.

***Commonwealth v. Philistin***, 774 A.2d 741, 743 (Pa. 2001), *cert. denied*, 536 U.S. 907 (2002) (citations and quotation marks omitted).

In this case, during opening statements, Wright's mother shouted loudly in reaction to something that occurred in the audience. (***See*** N.T. Trial, 6/03/14, at 180). The jurors were removed from the courtroom immediately, the trial court admonished Wright's mother, and it banned her from trial for the rest of the day. (***See id.*** at 180, 184). Defense counsel and the Commonwealth drafted and agreed upon a curative instruction for the court to give to the jury, which reiterated the fact that they were to decide the case only on evidence gleaned from the witness stand. (***See id.*** at 188-89, 199-20).

Because the court provided a curative instruction to which defense counsel agreed, and which the jury is presumed to have followed, *see* *Commonwealth v. Spotz*, 716 A.2d 580, 587 (Pa. 1998), *cert. denied*, 526 U.S. 1070 (1999), we conclude that the trial court properly denied Appellant's motion for a mistrial on the basis of Wright's mother's outburst. *See Philistin*, *supra* at 743; *Caldwell*, *supra* at 774. Appellant's second issue does not merit relief.

In his third issue, Appellant argues that the court erred in denying his motion for a mistrial where an audience member stated that she recognized a juror in the presence of that juror and two other jury members (*See* Appellant's Brief, at 22). This issue does not merit relief.

The trial court describes what occurred as follows:

[A]n audience member stated her recognition of a juror [as a school crossing guard] in the presence of that juror and two other [] jurors. (*See* N.T. Trial, 6/09/14, at 170-71). [The juror did not know the audience member or her relation to the case, although she recognized her from when she had worked for the school as a crossing guard. (*See id.* at 175).] The audience member who made the statement was escorted from the building, and excluded from the courtroom for the balance of trial. (*See id.* at 195-99). Each of the three [] jurors who were involved in this incident were colloquied by both defense attorneys, the Commonwealth, and th[e c]ourt, and all of the jurors questioned confirmed that they could remain fair and impartial in their capacity as jurors. (*See id.* at 171-90). In an exercise of caution, th[e c]ourt additionally questioned each of the [fourteen] members of the jury panel to confirm that they could remain impartial and fair in deciding the case at bar, and received verbal verification from all of the jurors that they could do so. (*See id.* at 202-06). . . .

(Trial Ct. Op., at 12) (record citation formatting provided; some record citations added).

Based on the foregoing recitation of facts, as well as our independent review of the record, we conclude that the trial court properly denied Appellant's motion for a mistrial. *See Philistin*, *supra* at 743; *Caldwell*, *supra* at 774. The juror did not know the audience member, who was neither a witness nor a party in the case. Additionally, the court colloquied all members of the jury regarding their ability to be impartial, and Appellant utterly fails to establish that he was prejudiced by the audience member's comment. (*See* Appellant's Brief, at 22); *see also Philistin*, *supra* at 743. Appellant's third issue does not merit relief.[6]

---

[6] Moreover, we observe that Appellant's reliance on *Simmons v. United States*, 142 U.S. 148 (1891), and *Commonwealth v. Gains*, 556 A.2d 870 (Pa. Super. 1989), is not legally persuasive because the cases are factually distinguishable. (*See* Appellant's Brief, at 21). *Simmons* concluded that the trial judge properly dismissed a jury where an affidavit was produced during trial alleging a juror falsely swore during *voir dire* that he had no relationship with the defendant, and the jury read a letter written by defense counsel and published in a newspaper that commented on the affidavit. *See Simmons*, *supra* at 172. In *Gains*, the jury had been exposed to "**specific** and prejudicial information concerning the character and past conduct of [the intended victim], and perhaps of the [defendant], which had not been a part of the evidence presented in the courtroom." *Gains*, *supra* at 876 (emphasis in original). Additionally, both the defendant and intended victim testified during the trial, and the intended victim was a significant part of the case. *See id.* The circumstances of these cases are distinguishable from those presented here where the juror did not even know the audience member who had recognized her or her relation to the case. (*See* N.T. Trial, 6/09/14, at 174-75).

In Appellant's fourth issue, he challenges the trial court's denial of the joint motion for a mistrial that he represents was made when "the Commonwealth's representative broke redaction of the Appellant's statement twice, revealing that he had named his co[-]defendant in the statement." (Appellant's Brief, at 22; *see id.* at 22-24).[7] Appellant's issue is waived and would not merit relief.

It is well-settled that, where an appellant fails to provide pertinent caselaw and discussion, we deem his issue waived. *See Commonwealth v. Lebarre*, 961 A.2d 176, 181 (Pa. Super. 2008). Here, Appellant cites *Bruton v. United States*, 391 U.S. 123 (1968),[8] as potentially applying to his co-defendant, and discusses how *Bruton* has been applied in the Third

---

[7] In Appellant's statements to police, he outlined his participation in the shooting, and confirmed that it had been his intention to back-up his co-defendant, Owens. (*See* N.T. Trial, 6/06/14, at 69-72). Upon agreement of counsel, the statements were redacted to remove any mention of Owens, and instead identified him as "the other guy." (*Id.* at 70). During closing argument, counsel for the Commonwealth mentioned twice that, in his statements to police, Appellant stated that he went along "to back up [Owens]." (N.T. Trial, 6/10/14, at 144, 165). After the Commonwealth's closing, Appellant's counsel joined Owens's motion for a mistrial on the basis of the breaking of redaction. (*See id.* at 203-04). The court denied the motion.

[8] It appears that Appellant is referring to *Bruton*'s holding that the admission of a co-defendant's confession that implicated the defendant was prejudicial error even though trial court gave an instruction that the confession could only be used against the co-defendant and must be disregarded with respect to the defendant. *See Bruton*, *supra* at 125; (*see also* Appellant's Brief, at 23). This holding is wholly inapplicable to Appellant where he was the person who made the inculpating statement.

Circuit Court of Appeals. (*See* Appellant's Brief, at 23, 23 n.4). However, Appellant provides absolutely no pertinent law or discussion in support of his claim that he somehow was prejudiced by the break in redaction. Therefore, we deem his issue waived. *See* Pa.R.A.P. 2101.

Moreover, Appellant's claim that he "was disadvantaged in that the breaking of redaction made utterly transparent an already shaky charade as to who 'the other guy' in his statements might be, thus allowing the jury to believe that it was he who prevaricated as to his co[-]defendant's participation," is nearly incomprehensible and fails to establish prejudice. (Appellant's Brief, at 23); *see Caldwell*, *supra* at 774. Appellant's fourth claim would not merit relief.

In Appellant's fifth and sixth issues, he challenges the trial court's suppression rulings. (*See* Appellant's Brief, at 24-36).

The following standard guides our review.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Russell*, 938 A.2d 1082, 1090 (Pa. Super. 2007), *appeal denied*, 956 A.2d 434 (Pa. 2008) (citation omitted).

- 14 -

In this case, Appellant argues in his fifth issue that the trial court erred in denying his motion to suppress the statement he gave to police on November 15, 2012 because it was involuntary where "[a]t the time that [he] made his [] statement, he was overwhelmed by the experience of having been kept in solitary confinement." (Appellant's Brief, at 26; *see id.* at 24-29). He further maintains that, "[t]he appropriate thing for homicide detectives to do would have been to request that he be moved into the general population, to allow him at least a few days to reacclimate [before] re-initiat[ing] contact with him." (*Id.* at 26). The record belies Appellant's argument.

> As [the Pennsylvania Supreme Court has] often stated, the standard for determining whether a statement is voluntary is based on the totality of the circumstances and considers, among other things, whether the defendant was coerced or manipulated or promised something in exchange for his confession; essentially, we attempt to determine whether the defendant freely made the decision to give the statement. [The Court has] observed that:
>
> > When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession. . . .

*Commonwealth v. Ogrod*, 839 A.2d 294, 320 (Pa. 2003), *cert. denied*, 543 U.S. 1188 (2005) (citations omitted). Factors to be considered include:

> the duration and means of interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited

by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

*Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013) (citation omitted).

In this case, the evidence at the suppression hearing established that, on October 25, 2012, Appellant was transferred from Mercer County prison, where he was serving a state sentence, to Graterford Prison, where he was placed in restrictive administrative custody because "there was no space in [general] population." (N.T. Suppression, 6/02/14, at 57 (internal quotation marks omitted); *see id.* at 55)  On Friday, November 2, 2012, Appellant was transferred from Graterford Prison to the Philadelphia Police Department where Detective Tracy Bird of the Homicide Unit read Appellant his *Miranda* warnings, Appellant signed them, and he indicated that he wanted to make a statement. (*See id.* at 23-26, 55-56; N.T. Suppression, 6/03/14, at 92). The interview ended at approximately 7:00 p.m., and then he was placed in the department's cell room, until he could be returned to Graterford Prison after the weekend. (*See* N.T. Suppression, 6/02/14, at 28, 30; N.T. Suppression, 6/03/14, at 5-6).

When he returned to Graterford Prison, on Monday, November 6, 2012, Appellant was placed in restrictive housing for three days, until

November 9, 2012, because the institution again lacked space in general population. (*See* N.T. Suppression, 6/02/14, at 56-57). On November 9, 2012, "[w]hen space opened [], he was moved to general population." (*Id.* at 57). Appellant was placed in general population at the prison for six days, until November 15, 2012, when he was transported back to the Philadelphia Homicide Unit, arriving at approximately 3:45 p.m. (*See* N.T. Suppression, 6/03/14, at 60).

Detective Thomas Gaul of the Philadelphia Police Department Homicide Unit conducted an interview of Appellant from approximately 6:00 p.m. until 10 p.m. on November 15, 2012. (*See id.* at 55, 58). Detective Gaul orally advised Appellant of his *Miranda* warnings, and Appellant initialed and signed the waiver form. (*See id.* at 60-65). Appellant did not "appear to be under the influence of anything that would interfere with his ability to understand what [Detective Gaul] [was] saying and what [Appellant] was communicating to [him]." (*Id.* at 65). Appellant "was very coherent," (*id.*), and stated that he "underst[ood] the process that was taking place . . . and the right to an attorney[,]" because he "[had] been arrested three times before[.]" (*Id.* at 66). After giving his statement to the detective, Appellant reviewed a typed version of it, made a few changes, and signed it. (*See id.* at 67-69). Appellant was not threatened or forced into waiving his *Miranda* rights or making a statement, and no promises were made to him. (*See id.*

- 17 -

at 69-70). He affirmed that he "was given stuff to eat and drink and [he] used the bathroom." (*Id.* at 89).

Based on the foregoing, Appellant's argument that his November 15, 2012 statement was coerced and involuntary because he was not given the opportunity to "reacclimate" after being in solitary confinement fails. In fact, after being placed in restrictive administrative housing due to space issues at the prison, Appellant was placed in the general population for six days before being transferred to Philadelphia for the subject interview with police. We agree with the trial court that "[t]here was no evidence that placement of Appellant at any given time during his transferal to and from the Homicide Unit was anything but routine logistical practice." (Trial Ct. Op., at 14). Therefore, after our review of the totality of the circumstances surrounding Appellant's second statement to police, we conclude that the trial court properly denied Appellant's motion to suppress. *See Russell*, *supra* at 1090; *see also Bryant*, *supra* at 724; *Ogrod*, *supra* at 320. Appellant's fifth issue does not merit relief.

In his sixth issue, Appellant argues that "the trial court erred in granting the Commonwealth's motion to suppress drugs found [in the sweatshirt placed under Wright's head]." (Appellant's Brief, at 29) (unnecessary capitalization omitted). Appellant's issue does not merit relief.

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption

regarding a material fact. Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice.

***Commonwealth v. Loughnane***, 128 A.3d 806, 817-18 (Pa. Super. 2015) (citations omitted).

In this case, the court observed:

Because the drugs were not found on [Wright's] person and instead were found on the street after a third party introduced a foreign object into the crime scene, [the c]ourt did not find a nexus between the drugs and [Wright]. Further, no traces of illegal substances were found in [Wright's] blood . . . in the toxicology report conducted in connection with his autopsy.

(Trial Ct. Op., at 16).

Based on the foregoing, and our independent review of the certified record, we conclude that the trial court did not abuse its discretion or commit an error of law in granting the Commonwealth's motion to suppress the evidence where it was irrelevant to the material facts in the case. ***See Loughnane***, ***supra*** at 817-18; ***Russell***, ***supra*** at 1090. Appellant's sixth issue does not merit relief.

In his seventh issue, Appellant claims that the trial court erred in denying his requests for a jury charge on involuntary manslaughter and an instruction based on ***Commonwealth v. Fowlin***, 710 A.2d 1130 (Pa. 1998).[9] (***See*** Appellant's Brief, at 36-39). Appellant's issue is waived.

_____

[9] In ***Fowlin***:

*(Footnote Continued Next Page)*

- 19 -

"A specific and timely objection must be made to preserve a challenge to a particular jury instruction.  Failure to do so results in waiver." *Commonwealth v. Moury*, 992 A.2d 163, 178 (Pa. Super. 2010) (citation omitted).  "[T]he mere submission and subsequent denial of proposed points

---

*(Footnote Continued)* ─────────────────────

Fowlin was accosted by three men who assaulted him with pepper spray and simultaneously drew a handgun.  Fowlin assumed, with reason, that they intended to kill or seriously injure him.  He acted instinctively and within our law in defending himself.

*Fowlin*, *supra* at 1134.

The Pennsylvania Supreme Court held:

Because the crimes with which Fowlin was charged[, reckless endangerment and aggravated assault,] require proof of recklessness, and because . . . a claim of self-defense, if believed, negates any element of recklessness, Fowlin, *a fortiori*, cannot be found to have been reckless, for the Commonwealth admits that his actions were justified.  If he cannot be held to have been reckless, he cannot be convicted of aggravated assault or reckless endangerment.

*Fowlin*, *supra* at 1133.  The Court limited its holding, however, by observing:

[I]f the victim acts outside of the parameters established by the law, then his act is not justified and he may be prosecuted for injury to bystanders or others which he may inflict. . . . If . . . [he] did not reasonably believe deadly force was necessary; he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable and he may be prosecuted for injuries or death he inflicts on the assailants or on bystanders.

*Id.* at 1134.

for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." **Commonwealth v. Hitcho**, 123 A.3d 731, 756 (Pa. 2015) (citation omitted); **see also** Pa.R.Crim.P. 603, 647(C).

In this case, when the trial court denied Appellant's requests for involuntary manslaughter and **Fowlin** instructions, he failed to object. (**See** N.T. Trial, 6/06/14, at 219-20; N.T. Trial, 6/10/14, at 211, 275-76). Therefore this issue is waived. **See Hitcho**, **supra** at 756; **Moury**, **supra** at 178.[10]

_____

[10] Moreover, based on our independent review of **Fowlin** and this case, including the trial court's jury charge, we conclude that it did not abuse its discretion or commit an error of law in denying Appellant's jury instruction requests. **See Commonwealth v. Johnson**, 107 A.3d 52, 89 (Pa. 2014), *cert. denied*, 136 S.Ct. 43 (2015) ("A trial court's denial of a request for a jury instruction is disturbed on appeal only if there was an abuse of discretion or an error of law.") (citation omitted). The evidence produced did not support an involuntary manslaughter charge. Also, the trial court properly found that Appellant's attempt to create a jury instruction on the basis that **Fowlin** somehow negated his liability for third degree murder was unavailing where the holding in **Fowlin** applied to a **victim** who acted recklessly in justifiable self-defense, not to an active participant who acted with malice and provoked the incident. (**See** N.T. Trial, 6/10/14, at 208-11; **see also Fowlin**, **supra** at 1134. Therefore, even if properly preserved, this argument would not merit relief.

In his eighth and final issue, Appellant challenges the discretionary aspects of his sentence.[11] (**See** Appellant's Brief, at 39-42).

> A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute. When challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence. Two requirements must be met before we will review this challenge on its merits. First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. That is, [that] the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. We examine an appellant's Pa.R.A.P. 2119(f) statement to determine whether a substantial question exists. Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits.

**Commonwealth v. Hill**, 66 A.3d 359, 363-64 (Pa. Super. 2013) (citations omitted) (emphases in original).

Here, Appellant's Rule 2119(f) statement consists of one sentence, which states: "The Appellant requests allowance of appeal as to the discretionary aspects of sentencing in this matter, given the severity of the

---

[11] Appellant raised this issue in his post-trial motion for reconsideration of sentence. **See Commonwealth v. Foster**, 960 A.2d 160, 163 (Pa. Super. 2008), *affirmed*, 17 A.3d 332 (Pa. 2011) (observing that, to preserve claims relating to the discretionary aspects of a sentence properly, an appellant must first raise them with the trial court).

sentence imposed and the young age of the Appellant, who was [twenty-four] when this unfortunate incident occurred, and given that this is the Appellant's first incident of violence with weapons[.]" (Appellant's Brief, at 39). Although Appellant's Rule 2119(f) statement is brief, we find that it raises a substantial question. *See Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015) ("[A]n excessive sentence claim[] in conjunction with an assertion that the court did not consider mitigating factors[]" raises a substantial question) (citation, footnote, and internal quotation marks omitted). Therefore, we will review its merits.[12]

> Our standard of review of a sentencing challenge is well-settled:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

_____

[12] The Commonwealth objects to Appellant's Rule 2119(f) statement on the basis that it is "defective." (Commonwealth's Brief, at 38). We acknowledge that generally we deem an issue waived where the Commonwealth objects to an appellant's failure to include a Rule 2119(f) statement. *See Commonwealth v. Zugay*, 745 A.2d 639, 653-54 (Pa. Super. 2000), *appeal denied*, 795 A.2d 976 (Pa. 2000). However, because Appellant did include the statement and it raises a substantial question, we will review his issue despite the statement's brevity.

*Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012), *appeal denied*, 63 A.3d 774 (Pa. 2013) (citation omitted).

Here, Appellant maintains that his sentence is "excessively harsh," (Appellant's Brief, at 40), and "will effectively warehouse [him] for most of his life," (*id.*). He argues that the court failed to consider that "[h]e has a learning disorder and is sometimes manipulated by older, smarter people[.]" (*Id.* at 41). We disagree.

We first observe the record reveals that the court heard extensive argument from Appellant's counsel, (*see* N.T. Sentencing, 10/08/14, at 6-15); considered letters from Appellant, his friend, and his mother, (*see id.* at 6-7); and was aware that Appellant had family members in the audience, (*see id.* at 7). The court also heard testimony from Wright's grandmother; and considered Appellant's criminal history and prior record score.. (*See id.* at 3-5, 16-18). Importantly, the court had the benefit of a pre-sentence investigation report, and therefore we "presume[] that [it] was aware of the relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Fowler*, 893 A.2d 758, 766-67 (Pa. Super. 2006) (citation omitted); (*see* N.T. Sentencing, 10/08/14, at 3).

Therefore, we conclude that the trial court did not manifestly abuse its discretion in imposing Appellant's guideline range sentence. *See Glass*, *supra* at 727. Appellant's eighth issue does not merit relief.

Judgment of sentence affirmed.

Judge Lazarus joins the Memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2016