J-S52040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ELVIN RAFAEL MATEO | : | |
| | : | |
| Appellant | : | No. 1784 MDA 2016 |

Appeal from the Judgment of Sentence August 29, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0005730-2015

BEFORE:   GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED SEPTEMBER 22, 2017**

Appellant, Elvin Rafael Mateo, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his jury trial convictions for conspiracy to commit first degree murder, first degree murder, attempted first degree murder, and aggravated assault.[1]   We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.[2]  We add only that Appellant timely filed a concise statement

---

[1] 18 Pa.C.S.A. §§ 903, 2502(a), 901(a), 2702(a)(1), respectively.

[2] In its opinion at page 5, the trial court states Thomas Hoke testified that he saw an occupant of a red SUV wearing a black jacket while the vehicle drove
*(Footnote Continued Next Page)*

of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on November 9, 2016.

Appellant raises the following issues for our review:

> [WHETHER] THE JURY VERDICT WAS AGAINST THE GREATER WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL SO AS TO SHOCK ONE'S SENSE OF JUSTICE ON THE FOLLOWING GROUNDS: THE COMMONWEALTH'S EVIDENCE DID NOT DISPROVE BEYOND A REASONABLE DOUBT [APPELLANT'S] CLAIM OF SELF DEFENSE, THE COMMONWEALTH'S EVIDENCE DID NOT DISPROVE BEYOND A REASONABLE DOUBT THAT THE ALLEGED VICTIM(S) WERE THE INITIAL AGGRESSOR(S), IN THAT THE COMMONWEALTH DID NOT PRODUCE A MURDER WEAPON OR OTHER SUFFICIENT EVIDENCE THEY DID NOT ESTABLISH BEYOND A REASONABLE DOUBT THAT [APPELLANT] KILLED [VICTIM 1] OR INJURED [VICTIM 2?]
>
> [WHETHER] THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT AS TO ALL CHARGES ON THE FOLLOWING GROUNDS: THE COMMONWEALTH'S EVIDENCE DID NOT DISPROVE BEYOND A REASONABLE DOUBT [APPELLANT'S] CLAIM OF SELF DEFENSE, THE COMMONWEALTH'S EVIDENCE DID NOT DISPROVE BEYOND A REASONABLE DOUBT THAT THE ALLEGED VICTIM(S) WERE THE INITIAL AGGRESSOR(S), IN THAT THE COMMONWEALTH DID NOT PRODUCE A MURDER WEAPON OR OTHER SUFFICIENT EVIDENCE THEY DID NOT ESTABLISH BEYOND A REASONABLE DOUBT THAT [APPELLANT] KILLED [VICTIM 1] OR INJURED [VICTIM 2?]
>
> [WHETHER] THE HONORABLE TRIAL COURT ERRED IN ADMITTING TESTIMONY FROM DETECTIVE FETROW THAT [APPELLANT], IN RESPONSE TO A QUESTION AS TO HOW HE WAS EMPLOYED, STATED THAT HE SOLD DRUGS

_(Footnote Continued)_ ———————————

away from an area where shots had been fired. The record shows Thomas Hoke actually testified that he could not remember the clothing of the occupants in the vehicle.

WHICH PREJUDICE TO [APPELLANT] FAR OUTWEIGHED ANY PROBATIVE VALUE[?]

(Appellant's Brief at 4).

When examining a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted).

A challenge to the sufficiency of the evidence implicates the following legal principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a

defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The standard of review for admission of evidence is as follows: "The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Ballard*, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Goldman*, 70 A.3d 874, 878-79 (Pa.Super. 2013),

*appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." **Commonwealth v. Lopez**, 57 A.3d 74, 81 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Maria Musti Cook, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed January 20, 2017, at 10-26) (finding: **(1)** no evidence Appellant or Appellant's co-defendant presented at trial served as basis for claim of self-defense; therefore, Commonwealth had no obligation to prove Victims were not initial aggressors and Appellant did not shoot Victims in self-defense; additionally, evidence established Appellant was not free from fault in provoking incident; testimony of Raymond Bruno-Carrasquillo indicated on night of incident, Appellant and co-defendant drove around "lurking" for targets from rival gang; Appellant cannot initiate hunt for gang members and subsequently claim self-defense; jury received instruction regarding use of force/deadly force in self-defense, even though no evidence presented at trial warranted finding of self-defense; Commonwealth did not produce murder weapon, but abundance of circumstantial evidence and other significant evidence supported finding of guilt beyond reasonable doubt; Bruno-Carrasquillo testified Appellant told

Bruno-Carrasquillo that, on night of incident, Appellant sought retribution against gang and shot into vehicle Victim 2 was driving, shooting driver and passenger of car; Bruno-Carrasquillo also testified that co-defendant said he drove up to Victim 2's car and Appellant shot into car; Belinda Akers testified she lent her maroon SUV to male, on night of incident, whom she later identified as co-defendant, and he returned the SUV with shattered rear window; co-defendant's cell phone contained text messages from Aker's cell phone about her SUV; Thomas Hoke testified he heard series of gunshots on night of incident and saw maroon or red SUV occupied by two black males drive away at high speed from area of shooting; Detective Gregory Schick testified there were multiple bullet holes in Victim 2's vehicle, while Ms. Akers testified there were no bullet holes in her SUV; evidence established on night of incident, Appellant and co-defendant each dropped guns as they fled on foot from police; DNA analyst testified it was highly likely DNA found on gun Appellant dropped was Appellant's DNA; bullet found in Victim 2's car matched gun Appellant dropped; gunshot residue analysis revealed existence of gunshot residue on Appellant's clothing and hands; evidence and testimony presented were sufficient for jury to determine Appellant's guilt; verdict does not shock court's conscience; **(2)** given this evidence, Appellant failed to assert valid defense of self-defense; in his Rule 1925(b) statement, Appellant failed to state with specificity what elements of his four convictions Commonwealth allegedly failed to prove beyond reasonable

doubt; therefore, Appellant has waived his sufficiency issue; **(3)** at trial, Bruno-Carrasquillo testified he and Appellant sold drugs every day; Bruno-Carrasquillo's credibility was at issue; Commonwealth offered Appellant's statement to police, that Appellant sold drugs for living, to substantiate Bruno-Carrasquillo's testimony; Appellant's own statement that he sold drugs for living was admissible).[3]  Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2017

---

[3] At pages 10-11, the trial court block quoted the pre-August 29, 2011 version of 18 Pa.C.S.A. § 505(b)(ii), regarding when the use of deadly force is unjustifiable; the difference between the quoted version and the current version is insignificant for the purpose of this appeal.  At pages 25-26, the trial court quoted Pa.R.E. 404(b)(3) as stating evidence of other crimes, wrongs, or acts "may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice."  This principle is from Pa.R.E. 404(b)(2), which states, "In a criminal case [evidence of crimes, wrongs, or other acts] is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice."  Pa.R.E. 404(b)(2).

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

        V.

ELVIN MATEO,
Appellant

:     NO. CP-67-CR-5730-2015
:
:
:
:
:
:
:
:

## STATEMENT OF LOWER COURT PURSUANT TO PA.R.A.P. 1925(a)

AND NOW, this ⟨23rd⟩ day of January 2017, upon receipt of a notice that an appeal has been filed in this matter, and in consideration of the Concise Statement of Matters Complained Of on Appeal filed on behalf of Elvin Mateo ("Defendant"), by and through his attorney, Richard Robinson, Esquire, the undersigned files this statement pursuant to Pa.R.A.P. 1925(a).

The reasons for this Court's denial of Defendant's post-sentence motion can be found herein.

1

## FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with the following offenses: Criminal Conspiracy to Criminal Homicide under 18 Pa. C.S.A. 903(a)(1), 18 Pa. C.S.A. 2501(a); Murder of the First Degree under 18 Pa. C.S.A. 2502(a); Murder of the Third Degree under 18 Pa. C.S.A.2502(c); Criminal Attempt to Murder of the First Degree under 18 Pa. C.S.A. 901(a), 18 Pa. C.S.A. 2502(a); and, Aggravated Assault under 18 Pa. C.S.A. 2702(a)(1).

The incident giving rise to these charges occurred as follows. On October 15, 2013, at approximately 10:24 P.M., York City Police responded to the area of North Newberry Street and West Gas Avenue to investigate a report of shots fired in the area. Upon arrival at the 300 block of West Gas Avenue police observed people looking at the ground in the parking area, mid-block on the north side of the street. Police further observed multiple shell casings on the ground along with tinted window glass shards. As police were investigating the 300 block of West Gas Avenue, they received a radio call for officers to respond to 128 Jefferson Avenue to investigate two gunshot victims at that location. Upon arrival, officers located Jordan

2

Breeland in the back seat of a gold Buick Rendezvous. The alleged second victim, Davon Brown, could not be located but police did eventually establish contact with him at the hospital upon notice that Brown was in triage being evaluated.

Breeland had a visible gunshot wound to the chest and police removed him from the vehicle in an attempt to perform emergency care until advanced life support arrived. Breeland subsequently died at the scene. On October 16, 2013, a forensic autopsy was performed on Breeland which ruled his death a homicide with the cause being a gunshot wound to the chest.

The driver of the vehicle, Davon Brown, received treatment for a gunshot wound to his left hand and a small wound on his right wrist at Wellspan York Hospital. Brown told police that he was driving the gold Buick with Timiere Crosby in the front passenger seat and Breeland seated in the rear of the vehicle. As they were driving in the 300 block of West Gas Avenue, a SUV type vehicle pulled up to their vehicle and individuals in that car began firing into the SUV being driven by Brown.

3

On October 16, 2013, at approximately 1:40 A.M., York City Police detectives, Detective Sowers and Detective Spence, arrived at 39 S. Belvidere Street to speak with a witness regarding the homicide when a report for shots fired in the area of Belvidere and Market Streets was broadcast over the radio. As these detectives approached the intersection, gunshots could be heard coming from east of their location. Detective Spence contacted County Control and a perimeter was established in the area. After the perimeter was established, police officers began searching the area for the source of the gunshots.

At 2:55 A.M., Trooper Panchik of the Pennsylvania State Police located two possible suspects who began to flee from the area of Hartley and Philadelphia Street. These two suspects were seen throwing handguns as they fled from police. The suspects were apprehended after the foot pursuit and both handguns were recovered. The suspects were identified as Elvin Mateo and Durell Cotton. Both suspects were wearing black jackets at the time of their arrest.

4

Dashboard surveillance was utilized in determining what actor threw which gun when they were fleeing from police. It was later determined that Defendant Mateo attempted to dispose of a .357 Rossi handgun and Defendant Cotton attempted to dispose of a Smith and Wesson 10 mm handgun. Both of these handguns were sent for ballistic analysis and it was determined that a bullet fragment recovered inside the Buick Rendezvous originated from the .357 Rossi firearm.

Gunshot Residue Analysis was conducted on both Defendant Mateo's and Defendant Cotton's clothing and hands. These tests established the existence of Gun Shot Residue on both Defendant's clothing and hands.

Thomas Hoke, who was working in the area at the time of the shooting, stated that he observed a maroon or red in color SUV occupied by two black males drive away from the area of the shooting at a high rate of speed heading towards Philadelphia Street. One of the vehicle's occupants was wearing a black jacket.

On October 16, 2013, Belinda Akers contacted Lower Windsor Police Department regarding damage to her 2003 Mercury Mountaineer SUV. This

5

vehicle is a SUV maroon in color, Ms. Aker reported that she loaned her vehicle to a male and when it was returned the rear window was shattered. She stated that on the evening of the homicide, she loaned her vehicle to a young black male and an hour after the shooting the male called a friend of Aker's and told her where it was parked. Aker's then located her vehicle with the new damage. Akers identified Defendant Cotton from an eight (8) person photo line-up as being the black male she loaned her SUV to on the night of the murder.

Photographs of Aker's Mercury Mountaineer were shown to Thomas Hoke and he states that it appeared to be the same color and body type of the vehicle he observed fleeing the scene immediately after the shooting.

On July 21, 2015, police interviewed Raymond Bruno-Carrasquillo regarding this incident. Bruno-Carrasquillo was with Defendant Cotton just prior to the shooting and was with both defendants on later dates where details of the murder were discussed. Defendant Mateo told Bruno-Carrasquillo that they were "lurking" for targets from the Parkway gang, the gang Jordan Breeland and Davon Brown were allegedly associated with.

6

Defendant Mateo told Bruno-Carrasquillo that they were in a SUV that Defendant Cotton had "rented" from an addict on the night of the alleged incident. Defendant Mateo further stated to Bruno-Carrasquillo that they had come across a gold color SUV driven by Davon Brown and he had a .357 handgun while Defendant Cotton possessed a 10mm handgun. Defendant Mateo further related to Bruno-Carrasquillo that he had fired into the driver's and passenger side of the vehicle. Additionally, Defendant Mateo said that later that same evening police chased both defendants and they attempted to throw away their guns.

On May 20, 2016, at the conclusion of the trial, a jury unanimously found both Defendant Mateo and his co-defendant, Defendant Cotton, guilty of first degree murder, criminal conspiracy, attempted murder, and aggravated assault. On August 29, 2016, Defendant was sentenced to an aggregate sentence of life imprisonment without the possibility of parole and 20-40 years consecutive. On September 8, 2016, Defendant filed a Post-Sentence Motion moving for a new trial based on a weight of the evidence claim. On October 6, 2016, this Court denied Defendant's Post Sentence Motion. A

7

timely notice of appeal was filed on October 25, 2016. This Court ordered Defendant to file a 1925(b) Statement of Errors Complained of on Appeal on October 26, 2016.

Defendant raises three main issues on review. In summary, they are as follows: (1) the jury verdict was against the greater weight of the evidence presented at trial so as to shock one's sense of justice; (2) the evidence at trial was insufficient to support the jury's verdict as to all charges; (3) this Court erred in admitting testimony from Detective Fetrow that the Defendant, in response to a question as to how he was employed, stated that he sold drugs which prejudiced the Defendant and far outweighed any probative value.

## DISCUSSION

### a. The jury verdict was against the greater weight of the evidence presented at trial so as to shock one's sense of justice

We review Defendant's claim based on the following standard:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges,

8

in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations and quotes omitted).

The Pennsylvania Supreme Court has held that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Commonwealth v. Brown, 648 A.2d 1177, 1189 (Pa. 1994), quoting Thompson v. City of Philadelphia, 493 A.2d 669, 672 (Pa. 1985). In denying Defendant's post-sentence motion, this Court's sense of justice was not shocked by the verdict.

In support of Defendant's argument that the jury verdict was against the greater weight of the evidence presented at trial so as to shock one's sense of justice, the Defendant claims:

1. **The Commonwealth's evidence did not disprove beyond a reasonable doubt the Defendant's claim of self-defense.**

2. **The Commonwealth's evidence did not disprove beyond a**

9

**reasonable doubt that the alleged victim(s) were the initial aggressors.**

However, this Court finds the record fails to establish as a matter of law a valid claim of self-defense.   In relevant part, section 505 of the Pennsylvania Crimes Code defines the concept of self-defense as, "[u]se of force justifiable for protection of the person. —The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505. However, the rule is not without limitations.  With regard to the use of deadly force:

(b) Limitations on justifying necessity for use of force.—

...

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by

10

retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take...:

18 Pa.C.S.A. § 505.

"While there is no burden on a defendant to prove [a] claim [of self-defense], before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense." Commonwealth v. Torres, 766 A.2d 342, 345 (Pa. 2001), citing Commonwealth v. Black, 376 A.2d 627, 630 (Pa. 1977). "If there is any evidence that will support the claim, then the issue is properly before the fact finder." Torres, supra at 345, citing Commonwealth v. Mayfield, 585 A.2d 1069, 1071 (Pa. Super. 1991). If the issue is properly before the fact finder, the Commonwealth bears the burden of proving beyond a reasonable doubt that the killing was not committed in self-defense. Commonwealth v. Gillespie, 434 A.2d 781, 784, (Pa. Super. 1980).

During closing arguments, Defendant presented a theory of self-defense. A claim of self-defense "may consist of evidence from whatever source. Such evidence may be adduced by the defendant as part of his case,

11

or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination." Mayfield, supra at 1070-71. In support of Defendant's claim, he directs this Court to the following testimony and evidence; (1) Thomas Hoke (T.T. pp. 159-179), (2) Todd Neumyer (T.T. pp. 654-659); (3) Officer Matthew Tunal (T.T. pp. 387-404); (4) Commonwealth's Exhibit 54 (Dick's Sporting Goods receipt); and, (5) Officer Gregory Schick (T.T. pp. 308-340).

Defendant did not testify on his own behalf and did not present any witnesses. Through presentation of the Commonwealth's case and Defendant's cross-examination of the Commonwealth's witnesses, in addition to thoroughly reviewing the before listed testimony as well as the entire record, this Court finds there was no evidence presented that would serve as a basis to establish a claim of self-defense. Thus, the Commonwealth was under no obligation to prove that the killing of Jordan Breeland and injuries to Davon Brown were not committed in self-defense and that the alleged victims were not the initial aggressors.

12

Additionally, when asserting a theory of self-defense, the defendant is required to show that he was: (1) free from fault in provoking or continuing the incident which resulting in the killing; (2) must have reasonably believed that he was in imminent danger of death or great bodily harm, and such force was necessary in order to save himself therefrom; and, (3) the defendant did not violate any duty to retreat or to avoid the danger. Commonwealth v. Samuel, 590 A.2d 1245, 1247-48 (Pa. 1991), 18 Pa.C.S. § 505.

There was significant evidence presented that established that the Defendant was not without fault in provoking the victims. Based on Raymond Bruno-Carrasquillo's testimony that Defendant had admitted to him that he and his co-defendant were driving around "lurking" for victims from the Parkway gang, this Court finds the Defendant is unquestionably at fault for initiating and perpetrating the incident giving rise to Defendant's convictions. (N.T. Trial, May 18, 2016, at 424). Use of force is only justified when the actor is protecting himself against the unlawful use of force. 18 Pa.C.S.A. §505(a). The Defendant cannot initiate a persecution for members of the Parkway gang and then argue that he was defending himself

13

against his victims. Consequently, Defendant should have been precluded from invoking a justification of self-defense.

The jury did receive the Use of Force/Deadly Force in Self-Defense Instruction however this Court concludes it was erroneously given. During the charge conference, the Commonwealth first objected to instruction stating,

> I've put a lot of thought into this since we discussed it a few days ago, and there has been no testimony presented to support a self-defense.... there are circumstantial inferences that can be certainly argued by defense counsel, but I have not heard any testimony indicating in any way that the victims in this case shot first.

(N.T. Trial, May 19, 2016, at 704).

However, the Commonwealth went on to say,

> I don't know the law, and can't make an argument to the Court with regard to case law and things of that nature at this point. And so, I would rather not try to do that without knowing the law. I would rather just honestly have it read, because I would hate for, should there be a conviction, for that to be an issue, and I just don't know.

(Id. at 708).

As stated above, there was no evidence presented at trial to warrant a finding by the jury of self-defense, and thus, that would warrant an instruction

14

on self-defense. Therefore, again, the Commonwealth was under no burden to disprove the defense beyond a reasonable doubt and prove that the alleged victims were not the initial aggressors. Accordingly, Defendant's claim that jury verdict was against the greater weight of the evidence because the Commonwealth's evidence did not disprove beyond a reasonable doubt the Defendant's claim of self-defense and that the alleged victims were the initial aggressors is without merit.

**3. In that the Commonwealth did not produce a murder weapon or other sufficient evidence they did not establish beyond a reasonable doubt that the Defendant killed Jordan Breeland or injured Davon Brown.**

In a related matter, Defendant contends he is entitled to a new trial on the grounds that the jury verdict was against the weight of the evidence at trial so as to shock one's sense of justice because the Commonwealth could not produce the murder weapon and failed to present other sufficient evidence to establish beyond a reasonable doubt that Defendant killed Jordan Breeland or injured Davon Brown. However, in denying Defendant's post-sentence motion, this Court's sense of justice was not shocked by the verdict.

15

The fact-finder "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Champney, 832 A.2d 403, 408 (Pa. 2003) (*quoting* Commonwealth v. Small, 741 A.2d 666 (Pa. 1999)). The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. Commonwealth v. Ramtahal, 33 A.3d 602, 607 (Pa. 2011). When challenging the verdict based on a weight of evidence claim, the defendant must show that the evidence was "so tenuous, vague and uncertain that the verdict shocks the conscience of the court" in order to prevail. Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa. Super. 2003).

Defendant again offers the following testimony in support of his claim: (1) Thomas Hoke (T.T. pp. 159-179), (2) Todd Neumyer (T.T. pp. 654-659); (3) Officer Matthew Tunal (T.T. pp. 387-404); (4) Commonwealth's Exhibit 54 (Dick's Sporting Goods receipt); and, (5) Officer Gregory Schick (T.T. pp. 308-340). However, this Court does not find the before listed testimony to be supportive of Defendant's argument.

16

While the Commonwealth did not produce the gun which discharged the fatal shot which killed Jordan Breeland, this Court finds there was an abundance of circumstantial evidence and other sufficient evidence presented to support the finding of guilt on all four of the charges Defendant was found to have committed. Upon review of the entire record, this Court finds the below testimony to be most supportive of verdict.

Raymond Bruno-Carrasquillo, a long-time acquaintance of Defendant testified that Defendant told Bruno-Carrasquillo he had "rented" a burgundy SUV from an addict in order to "lurk" for targets from the Parkway gang on the night the alleged incident. (N.T. Trial, May 18, 2016, at 418, 420, 424). Bruno-Carrasquillo stated Defendant was out for retribution on the Parkway gang because the parkway gang had recently "shot up" Liberty Court, a location the Defendant often frequented and more of less considered his territory. (Id. at 416-417, 418). Defendant told Bruno-Carrasquillo that while driving he had come across an SUV driven by Davon Brown with Jordan Breeland as a passenger. Bruno-Carrasquillo stated Defendant told him he had shot into the vehicle driven by Brown. (Id. at 424). Also, Bruno-

17

Carrasquillo testified that Defendant's co-defendant had told him he that he had pulled up to the victim's car and Defendant had shot into the car. (Id. at 426). Defendant later told Bruno-Carrasquillo that he had shot the driver of the vehicle and then he shot the passenger and left them "stinking." (Id. at 425).

Later, shortly after the alleged incident, Belinda Akers contacted Lower Windsor Police Department regarding damage to her 2003 Mercury Mountaineer SUV. (Id. at 365, 369, 373). She stated she had lent her maroon in color SUV to a male and it was returned with a shattered rear window. (Id. at 356, 364). When presented with a photo-lineup of eight individuals, Akers identified Defendant's co-defendant as the person she lent her SUV to on the night of the murder. (Id. at 369). Further, upon examination, Defendant's co-defendant's cell phone contained text messages from Aker's cell phone connecting the co-defendant's cell phone to the maroon Mercury Mountaineer. (Id. at 364).

18

Thomas Hoke, who was working in the area of the murder on the night of the alleged incident, testified that he had heard a series of gunshots and then saw a maroon or red SUV occupied by two black males drive away from the area of the shooting at a high rate of speed. (N.T. Trial, May 17, 2016 at 161-163).

Additionally, Detective Gregory Schick of the York City Police Department testified that there were multiple bullet holes identified on the victim's vehicle, while Ms. Aker's testified none where located on her SUV. (N.T. Trial, May 18, 2106, at 314-315, 328).

On the night of the alleged incident, the Pennsylvania State Police apprehended Defendant and his co-defendant after they fled from the police on foot. (N.T. Trial, May 17, 2016, at 251). Upon review of the recording devices equipped on their vehicles, police believe that Defendant dropped the .357 revolver during his flight that was found shortly before he was apprehended laying on the sidewalk in the area in which he fled from. (N.T. Trial, May 19, 2016, at 563, 566, 582). A DNA analyst testified that there was a one in seven trillion chance that it was Defendant's DNA found on the

19

.357 revolver. (Id. at 618). Additionally, one of the bullets found in the victim's car matched up with the .357 revolver. (Id. at 656). Further, a gunshot residue analysis, performed by Stephanie Horner, a forensic scientist employed by RJ Lee Group, revealed the existence of gunshot residue on Defendant's clothing and hands. (N.T. Trial, May 17, 2016, at 217, 218).

While circumstantial, this Court concludes that the evidence and testimony presented was sufficient for the jury to determine the Defendant's guilt for the elements of each charge beyond a reasonable doubt and the verdict does not shock this Court's conscience.

## b. The evidence at trial was insufficient to support the jury's verdict as to all charges.

Next, Defendant contends that the evidence presented at trial was insufficient to support the jury's verdict as to all charges, asserting:

1. **The Commonwealth's evidence did not disprove beyond a reasonable doubt the Defendant's claim of self-defense.**

2. **The Commonwealth's evidence did not disprove beyond a reasonable doubt that the alleged victim(s) were the initial aggressor(s)**

3. **In that the Commonwealth did not produce a murder weapon or other sufficient evidence they did not establish**

20

**beyond a reasonable doubt that the Defendant killed Jordan Breeland or injured Davon Brown.**

Defendant's insufficiency argument goes to the legal question of whether he could be convicted under 18 Pa. C.S.A. 903(a)(1), 18 Pa. C.S.A. 2501(a); 18 Pa. C.S.A. 2502(a); 18 Pa. C.S.A. 901(a), 18 Pa. C.S.A. 2502(a); and 18 Pa. C.S.A. 2702(a)(1). "A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations, footnotes, and quotation marks omitted).

From the same analysis presented above, this Court finds the Defendant has failed to properly assert a valid defense of self-defense. Accordingly, this Court finds Defendant's first two claims under his sufficiency of evidence claim are therefore meritless.

As to Defendant's third sufficiency claim, this Court finds the Defendant failed to state with specificity what specific elements of the four convicted crimes the Commonwealth allegedly failed to prove beyond a

21

reasonable doubt. Instead, Defendant's 1925(b) statement generically alleges that the "evidence at trial was insufficient to support the jury's verdict as to all charges … [i]n that the Commonwealth did not produce a murder weapon or other sufficient evidence they did not establish beyond a reasonable doubt that the Defendant killed Jordan Breeland or injured Davon Brown." Defendant's 1925(b) Statement, November 9, 2016.

The Superior Court has held that "an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." Commonwealth v. Garland, 63 A.3d 339, 344 (Pa. Super. 2013). "Such specificity is of particular importance in cases where…the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Id.

Here, Defendant was convicted of four separate offenses, yet Defendant's challenge to the sufficiency of evidence in his 1925(b) statement baldly asserts a blanket claim. Defendant's statement does not specify to this Court as to which elements were lacking proof for any of the four crimes and

22

why the evidence was insufficient to not support the verdict.

Defendant offers a wide-range of citations in the trial transcripts of where to find the testimony of certain trial witnesses to support his claim but such general supportive testimony says nothing about how or why the evidence was insufficient. Thus, this Court is left to guess what material elements the Defendant believes are unproven. "[A] Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." Commonwealth v. Heggins, 809 A.2d 908, 911 (Pa.Super.2002) (citation omitted). Accordingly, because Defendant's 1925(b) statement does not specify the allegedly unproven elements, this Court believes the Defendant's sufficiency issue is waived for appellate review.

**c. This Court erred in admitting testimony from Detective Fetrow that the Defendant, in response to a question as to how he was employed, stated that he sold drugs which prejudice to the Defendant far outweighed any probative value.**

Lastly, Defendant asserts that this court erred in allowing Detective Fetrow to testify that Defendant told Detective Fetrow that he sold drugs for a

living. (N.T Trial, May 19, 2016, at 503). Initially, during trial, Defendant objected to the statement being admitted arguing that such information was prejudicial to Defendant. (Id. at 278). When the issue was first presented this Court agreed the testimony would be prejudicial and at that point in the trial because there was nothing to corroborate the statement. (Id. at 279). The Commonwealth agreed to omit the question and revisit the issue after more of a foundation was laid. (Id.).

The following day the Commonwealth again raised the issue after eliciting testimony from Raymond Bruno-Carrasquillo. (N.T. Trial, May 19, 2016, at 493). During direct examination, Bruno-Carrasquillo stated that he and the Defendant were together, hanging out, almost every day prior to the alleged incident that injured Davon Brown and killed Jordan Breeland. (N.T. Trial, May 18, 2016, at 411). Further, Bruno-Carrasquillo testified that he and Defendant would wake up, go to Liberty Court and sell drugs, day after day. (Id.).

The Commonwealth felt as though Bruno-Carrasquillo was extensively cross-examined by both Defendant and his co-defendant and Bruno-

24

Carrasquilo's credibility was at issue. (N.T. Trial, May 19, 2016, at 493). The Commonwealth argued that it was important to allow Detective Fetrow to testify that Defendant told him that he sold drugs for a living because it would corroborate the testimony of Bruno-Carrasquillo and Bruno-Carrasquillo's testimony was vital to their case. (Id. 493, 494). Defendant again argued that the prejudice to the defense would outweigh any benefit or probative value the statement might have. (Id. at 494, 495). However, this Court disagreed and allowed Detective Fetrow to testify as to what the Defendant stated he had done for employment.

Evidence of Defendant's prior bad acts is not permissible to present as evidence at trial in order to establish the defendant's criminal character or tendencies. Commonwealth v. Hudson, 955 A.2d 1031, 1034 (Pa. Super. 2008). However, such evidence may be admissible "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." Commonwealth v. Russell, 938 A.2d 1082, 1092 (Pa. Super. 2007) (citation omitted). However, Rule 404(b)(3) provides that evidence of other crimes, wrongs, or acts "may be admitted in a criminal case

25

only upon a showing that the probative value of the evidence outweighs its potential for prejudice." Pa.R.E., Rule 404(b)(3).

This Court found that the probative value of Defendant's statement that he sold drugs for a living was not outweighed by any potential prejudicial effect. The statement was offered specifically and for the purpose of corroborating Bruno-Carrasquillo's testimony. The Court found that Bruno-Carrasquillo's credibility was certainly at issue and the introduction of Defendant's own statement would serve a legitimate purpose of corroborating the testimony of Bruno-Carrasquillo.

## CONCLUSION

Based on the above reasons, this Court respectfully urges affirmance of this Court's Order dated October 3, 2016.

The Clerk of Courts is directed to provide notice of the entry of this Statement to counsel of record.

BY THE COURT,

MARIA MUSTI COOK, JUDGE

26